## WILLIAM B. HILL vs. ELIZA HAYES AND ANOTHER.

*A* placed certain money, which he had stolen, in the hands of *B* as a depositary for him, and *B* afterwards, not knowing that it had been stolen, delivered the money to *C* with instructions to deliver it to *A*.

In trover against *B* by the owner of the money, the plaintiff requested the court to charge the jury, that if the defendant, when she received the money, or at any time before she delivered it to *C*, had reasonable or probable cause to believe either that it was stolen, or that *A* came improperly or dishonestly by it, or that it did not honestly belong to him, then she was guilty of a tortious conversion. But the court charged the jury, that if the defendant, when she delivered the money to *C* to be by him given to *A*, knew that it had been stolen, then such delivery was a tortious conversion by her; but that a suspicion on her part, even if founded on reasonable or probable cause, that the money had been stolen by *A*, was not sufficient to render her liable to the plaintiff by the delivery of the money to *C* for *A*; that such delivery would not be a conversion. Held, that the plaintiff was not entitled to the charge requested, and that the charge given was correct.

The plaintiff also claimed that *C* was the general agent of the defendant, and that she was chargeable with his knowledge and acts in respect to the money. On this point the court charged the jury, that if they should find that *C* was the general agent of the defendant, and that she put the money into the hands of *C* with special direction to deliver it to *A*, that *C* was only the agent of the defendant for that purpose, and even if *C* knew that the money had been stolen from the plaintiff by *C*, the defendant was not chargeable with such knowledge. Held, that such charge was unexceptionable

TROVER to recover the value of certain bank bills; brought to the Superior Court, and tried on the general issue closed to the jury, before *Minor, J.*

On the trial it was admitted that the money described in the declaration belonged to the plaintiff, and was on the night of the 4th of November, 1865, stolen from him in Redding, by one Billy Lake, a colored lad, who had, before he left Bridgeport the June previously, occasionally boarded for short periods of time in the family of the defendant, Hayes, an aged and infirm colored woman, who then resided in Bridgeport with her daughter the wife of Jenkins, the other defendant, and that on the morning of the 6th of November Billy delivered the money to the defendant, Hayes, to keep for him. Soon after, and on the same morning, Billy with Jenkins left her house, with the avowed intention of going to Birmingham

on business. On the afternoon of the same day, and before their return, the defendant, Hayes, was informed by some lads "that the officers were looking after Billy," but was not informed for what purpose. Jenkins soon returned, and she thereupon immediately gave the money to him, with directions to return it to Billy, and he forthwith left for that purpose. Soon after, Billy came and requested his money, but upon being informed of what had been done immediately left. Mrs. Hayes had never used the money, or received any benefit from it, and during all the time it was in her hands had no knowledge that it was stolen. There was no evidence that the money was ever returned by Jenkins to Billy.

The plaintiff claimed from all the evidence that the circumstances connected with the delivery of the money to Mrs. Hayes were suspicious, and thereupon requested the court to charge the jury, that "if the defendant, Hayes, when she received the money, or at any time before she delivered it to Jenkins, had reasonable or probable cause to believe either that it was stolen, or that Billy came improperly or dishonestly by it, or that it did not honestly belong to him, then she was guilty of a tortious conversion, and is liable."

The court did not so charge the jury, but charged them that "if Mrs. Hayes, when she delivered the money to Jenkins to be by him given to Lake, knew that it had been stolen, then such delivery was a tortious conversion on her part, and the plaintiff is entitled to recover its value from her in this action; but a suspicion on her part, even if founded on reasonable or probable cause, that the money had been stolen by Lake, is not sufficient to render her liable to the plaintiff by the delivery of the money to Jenkins for Lake; such delivery would not be a conversion."

The defendants offered in evidence the deposition of the defendant, Hayes, in which she testified that when Lake gave her the money, her daughter and son-in-law, Jenkins, counted it, and then added the remark that "they always attended to her business."

From this, which was all the evidence upon the point, the

plaintiff claimed, and requested the court so to charge the jury, that Jenkins was the general agent of the defendant, Hayes, and that she was justly chargeable with his knowledge and acts in respect to the money; that if he knew it was stolen before he delivered it to Lake, the defendant, Hayes, would be equally liable with himself, and equally so for any other conversion or use of the money, or failure to deliver it to the plaintiff on demand; and that if Jenkins knew when he took the money of the defendant, Hayes, that it was stolen, his knowledge was her knowledge, and she was legally chargeable with it, inasmuch as he was, and was acting as, her agent throughout the whole transaction.

On this part of the case the court charged the jury as follows: " If Jenkins was the general agent of the defendant, Hayes, and you so find from the testimony, and shall further find that Hayes put this money into the hands of Jenkins with special directions to deliver it to Lake, then Jenkins is in this case only her agent for that purpose, and even if Jenkins knew that the money had been stolen from the plaintiff by Lake, Mrs. Hayes is not chargeable with such knowledge."

The jury returned a verdict in favor of the defendant, Hayes, and the plaintiff moved for a new trial for error in the charge, and for a refusal to charge as requested.

*White* and *Sanford*, in support of the motion, cited 1 Swift Dig., 536; *Kimball* v. *Billings*, 55 Maine, 147; *Vining* v. *Baker*, 53 id., 544; *Norton* v. *Kidder*, 54 id., 189; *Taylor* v. *Pope*, 5 Coldw. (Tenn.), 413; *Hartop* v. *Hoare*, 3 Atk., 50, 44; *Heckle* v. *Lurvey*, 101 Mass., 344; *Thorp* v. *Burling*, 11 Johns., 285; *McCombie* v. *Davies*, 6 East, 540, 538; *Syeds* v. *Hay*, 4 T. R., 260, 264; *Stephenson* v. *Hart*, 4 Bing., 476; 483; *Snow* v. *Peacock*, 3 id., 406; *Snow* v. *Peacock*, 2 Car. & P., 215; *Boyce* v. *Brockway*, 31 N. Y., 490; *Lockwood* v. *Bull*, 1 Cow., 322; *West Jersey R. R. Co.* v. *Trenton Car Works Co.*, 32 N. J., 517; *Courtis* v. *Cane*, 32 Vt., 232; *Clark* v. *Whitaker*, 19 Conn., 319.

*Treat* and *Bullock*, contra.

Hill *v.* Hayes.

BUTLER, C. J. The defendant, Hayes, was a mere depositary of Lake, and returned the money to her bailor without knowledge that it was not his, and there was no demand and refusal. The plaintiff must therefore rely on a re-delivery, *tortious* in its nature as to him. He claimed in his first request as to the charge, that a re-delivery of property to the bailor by such a bailee, having "reasonable or probable cause to believe either that it was stolen, or that he came improperly or dishonestly by it, or that it did not belong to him," is a *tortious* conversion in respect to a then unknown owner. There is no such doctrine in the law.

None of the cases cited sustain the proposition. Those from Swift were actions *between bailor and bailee*, where there had been a wrongful delivery to a *third person*, or a wrongful *use*, or wrongful *appropriation* of the property. Of the same character was *Lockwood* v. *Bull*, 1 Cow., 322, *Syeds* v. *Hay*, 4 T. R., 260, and the cases cited from 4 Bingham. *McCombie* v. *Davies*, 6 East, 538, was a case of wrongful detention, without re-delivery to the bailor, by a pawnee of property wrongfully pawned by *an agent*. *Thorp* v. *Burling*, 11 Johns., 285, was a case of wrongful *taking* from the agent of the owner. Upon a question whether the cartman employed by the defendants was liable as a co-trespasser, it was holden that he was, as he was in no sense a public officer, and there were suspicious circumstances to put him on inquiry. But that cartman was a *servant* of the wrongful takers, and not a bailee. *Snow* v. *Peacock*, 3 Bing., 406, was trover by the owner of a stolen bank note against a *purchaser* from the thief, under suspicious circumstances, who had appropriated it to his own use, and refused to deliver it up—a very different case from this. *Clark* v. *Whitaker*, 19 Conn., 319, was a case of tortious *taking* and tortious *appropriation* both. None of these or the other cited cases are in point.

On the other hand, there are authorities to the effect that to constitute a conversion in such case, there must be a wrongful intention to aid in depriving the owner of his property, and that re-delivery to the bailor, even with knowledge that

the property was stolen, but without such wrongful intention, will not be a conversion. *Simmons* v. *Lillystone*, 8 Exch., 442 ; *Loring* v. *Mulcahy*, 3 Allen, 575 ; *Polley* v. *Lenox Iron Works*, 2 id., 182, and cases cited ; *Fouldes* v. *Willoughby*, 8 M. & W., 540. The charge on this point was favorable to the plaintiff.

The charge of the court in relation to agency was unexceptionable. It did not appear that the defendant, Hayes, carried on a general business as depositary, or that Jenkins was her general agent in that or any other business. If he was, the charge was not objectionable. In relation to the re-delivery of the money in question, Jenkins was a special agent, if agent at all, and the defendant was not chargeable with any knowledge Jenkins might have possessed. Moreover, the plaintiff had not shown, nor was there any evidence in the case tending to show, that Jenkins had any such knowledge. The claim was therefore hypothetical, and need not have been noticed, and the charge, if wrong, did not prejudice the plaintiff.

A new trial is not advised.

In this opinion the other judges concurred ; except GRANGER, J., who did not sit.