Jacob Leuthold and others *vs.* E. E. Fairchild and others.

## March 31, 1886.

Practice—Compulsory Examination of Party before Trial.—It is error in the district court to make an order requiring a party to answer written interrogatories prepared by the opposite party.

Wrongful Shipment, by Warehouseman, of Grain stored—Demand by Receipt-holder.—A demand by the holder of a warehouse or elevator receipt for grain deposited for storing, for the amount called for by the receipt, is good, notwithstanding that, by reason of removal of grain by the warehouseman, there is not enough left in store to answer all the receipts.

Same—Bills of Lading in Name of Bank discounting Drafts—Conversion.—Y., a warehouseman, having in his warehouse wheat depos-

| | |
|---|---|
| 35 | 99 |
| 39 | 214 |
| 39 | 217 |
| 39 | 218 |
| 35 | 99 |
| 43 | 35 |
| 35 | 99 |
| 63 | 93 |
| 35 | 99 |
| ia79 | 175 |
| 35 | 99 |
| d83 | 502 |

ited by others for storing, shipped it, without tl.eir consent, on the cars for Chicago; took bills of lading, in which the Bank of K. was named as consignee; drew his drafts on the parties in Chicago for whom the wheat was destined; procured the bank to discount them, delivering to it the bills of lading as security for them. The bank indorsed the bills in blank, and forwarded them, with the drafts, to its correspondent in Chicago, and the latter, on payment of the drafts, delivered the bills of lading to the drawee. *Held*, that this did not render the bank liable, as for a conversion, to the owners of the wheat.

Same — Liability of Agent knowingly aiding in the Wrong. — *Held*, *also*, that the agent of the warehouseman, who assists him in so disposing of the wheat, knowing that he is doing it wrongfully, is liable to the owners of the wheat.

On Re-argument.

May 4, 1886.

Same—When Agent is innocent of Wrong.—An agent or servant who, acting solely for his master or principal, and by his direction, and without knowing of any wrong, or being guilty of gross negligence in not knowing of it, disposes of, or assists the master in disposing of, property which the latter has no right to dispose of, is not thereby rendered liable for a conversion of the property.

The plaintiffs, who are holders of warehouse receipts for grain delivered by them to one John Young for storage, brought this action in the district court for Dodge county, against the First National Bank of Kasson, the administratrix of said John Young, deceased, the executrix of one John Fern, deceased, defendant Fairchild, personally, and as assignee for John Young, and various other persons who held other warehouse receipts issued by said John Young. The object of the action, and the judgment prayed for, was that a disclosure and accounting might be had as to all wheat delivered in store to said John Young, and as to all wheat delivered by said Young into the possession of the defendant bank and defendant Fairchild, and that the bank and Fairchild be compelled to account for the wheat alleged to have been delivered to and converted by them and for the value and the proceeds thereof, and that they be required to bring such

proceeds into court, to be administered and disposed of. as the court should direct.

The action was tried before *Buckham*, J., without a jury, and the facts, as found by the court, were substantially as follows: Prior to June 4, 1883, said John Young was a warehouseman and grain buyer, and owned and operated a grain warehouse at Kasson, and was engaged in the business of taking and receiving in store from others, for the purpose of bailment and storage in such warehouse, wheat of all grades, and of issuing therefor to the depositors thereof storage tickets or receipts, which were in the following form, viz.:

"Kasson Elevator Ticket. Received of Jacob Leuthold 586 bu. No. 3 wheat, kind mixed. Terms of storage 20 days free, $\frac{1}{2}$ c. per bu. every 10 days or part thereof after. From Aug. 1st to May 1st, not to exceed 4 c., from Aug. 1st to Aug. 1st, not to exceed 7 c. If delivered, 2 c. per bu. additional. Express authority is given by acceptance hereof that said wheat may be mingled with grain of other persons and shipped or removed to any other elevator we may select. Insured to full value.

"1882, Mo. 12, Day 13.

"John Fern, Inspector, for John Young."

During the same time Young was engaged in buying wheat on his own account, which was commingled with the wheat received by him from others in store for bailment, and also buying in his outstanding tickets or receipts. All the wheat received was mingled together according to its grade, test and condition.

"During all said time, one John Fern was the agent and wheat inspector of the said John Young, and assisted him in operating said elevator, and managing said warehouse business, and in all the transactions hereinafter set out."

At various times between September 15, 1882, and June 1, 1883, each of the plaintiffs delivered to John Young, wheat in various amounts and grades, to be held in store, for which they received and still hold wheat receipts in the above form. The defendant bank, and the executrix of John Fern, also hold receipts for wheat delivered to said John Young for storage.

The defendant Fairchild as cashier of the bank, and its president, had at all times notice of the business so carried on by the said John Young, and had knowledge that he was so receiving grain on storage and issuing tickets therefor and commingling the grain which was stored with that purchased by him.

On June 2, 1883, John Young made an assignment to defendant Fairchild for the benefit of creditors, pursuant to the provisions of Gen. St. 1878, c. 41, § 23.

For some time prior to the assignment Young had been accustomed to ship out by railroad to market at Chicago and elsewhere, the grain purchased by him and commingled in his elevator with that on storage therein, and selling the same. In shipping out and selling the same he caused it to be loaded on cars of the Winona & St. Peter Railroad Co., at Kasson, and received from the railway company bills of lading in the usual form, in which the bank was named as consignee, and which bills of lading were delivered to defendant Fairchild, as cashier of the bank, with drafts in favor of the bank for various round sums of money, drawn by him on the parties in Chicago or Milwaukee to whom the grain so shipped was to be forwarded.

Thereupon defendant Fairchild, acting on behalf of the bank, endorsed the drafts to the Chicago correspondent of the bank, and endorsed in blank the bills of lading accompanying the drafts, and attached the same to the drafts and forwarded them by mail to its correspondent with instructions to present the drafts for payment, and if paid to deliver them and the bills of lading to the drawee named in the draft. The drafts so drawn and sent with such bills of lading were all paid on presentation, and were, with the bills of lading attached thereto, delivered to the parties on whom such drafts were drawn.

Upon the delivery to the bank of such bills of lading and drafts, the defendant Fairchild, as cashier, passed the amount of all such drafts, less the discount, to the credit of John Young, on the books of the bank. All money so credited to Young was by him drawn out before the assignment, above mentioned.

Between September 26, 1882, and June 1, 1883, about 50,000

bushels of wheat were shipped out and sold in the manner above stated,—being all the wheat shipped out and sold during that period.

On June 2, 1883, there remained in the warehouse 1,900 bushels of No. 3 and rejected wheat, and no more, and at that time there were outstanding wheat receipts to the amount of over 4,400 bushels.

On June 4, 1883, John Fern was put in charge of the warehouse by the defendant Fairchild, as assignee, and on the same day the plaintiffs duly produced and tendered all their warehouse receipts and offered to pay storage, and demanded the delivery of the wheat called for by the receipts, which demand was refused. The officers of the defendant bank, in discounting the drafts and receiving the bills of lading, acted in good faith, and had, at the time of transacting such business, no actual knowledge or notice of the actual condition of the storage accounts, or of the amount of the outstanding warehouse receipts, or of the amount of wheat in the warehouse, or of the financial condition of John Young.

John Young died in September, 1883, and John Fern died in April, 1884.

Upon the above facts the court found the conclusions of law stated in the opinion. Judgment was rendered in accordance therewith, from which judgment the defendants Fairchild, the First National Bank of Kasson, and the executrix of John Fern, deceased, appeal.

*Chas. C. Willson,* for appellants.

The holding of a bill of lading by the bank, as security, while the draft was going forward by mail and being presented for payment, and then delivering it with the draft was not a conversion by the bank of the wheat named in the bill of lading. *Leonard* v. *Tidd,* 3 Met. 6; *Loring* v. *Mulcahy,* 3 Allen, 575; *Hill* v. *Hayes,* 38 Conn. 532; *Parker* v. *Lombard,* 100 Mass. 405; *Spooner* v. *Holmes,* 102 Mass. 503; *Presley* v. *Powers,* 82 Ill. 125.

The plaintiffs negligently allowed Young to ship the grain, hold the bills of lading, and have the power to negotiate them. As between the bank and the plaintiffs the equity is with the bank. *Price* v. *Wis. Marine & Fire Ins. Co.,* 43 Wis. 267; *McNeil* v. *Tenth Nat. Bank,* 46 N. Y. 325; *Shaw* v. *Railroad Co.,* 101 U. S. 557, 565; *Cochran* v. *Stewart,* 21 Minn. 435.

*Robert Taylor* and *R. H. Gove*, for respondents.

The depositors of wheat are the legal and rightful owners thereof, and entitled to the possession of the same upon demand, although mingled with other grain. Gen. St. 1878, *c.* 124, § 13; *Dows.* v. *Ekstrone*, 3 Fed. Rep. 19; *Greenleaf* v. *Dows*, 8 Fed. Rep. 550.

It was not in the power of Young, the warehouseman, to pass any title to the grain stored with him to the bank or to any one else. The bank and its officers knew, or were bound to know, that Young could not give any title to the wheat. They knew he was engaged in receiving wheat on store and commingling the same, and were themselves among the depositors. If the bank discounted the drafts or took bills of lading or made advances on this wheat, without knowing or ascertaining whether Young was obtaining wheat enough to meet his outstanding storage receipts, it was negligence on their part. The wrongful acts of Young, in obtaining the bills of lading and delivering them to the bank, conferred no greater title to the wheat than would have been conferred by a delivery of the wheat itself. *Saltus* v. *Everett*, 20 Wend. 267, (32 Am. Dec. 541;) *Dows* v. *Perrin*, 16 N. Y. 325; *Decan* v. *Shipper*, 35 Pa. St. 239, (78 Am. Dec. 334;) *Williams* v. *Merle*, 11 Wend. 80, (25 Am. Dec. 604, 613;) *The "Idaho,"* 93 U. S. 575; *Security Bank* v. *Luttgen*, 29 Minn. 363.

The acts of the bank amounted to a conversion. One who assumes and exercises dominion over property to the exclusion of the rights of the true owner, is guilty of a conversion, and that, too, though he may have purchased without notice from one in possession but having no right to sell or ownership. *Bristol* v. *Burt*, 7 John. 254, (5 Am. Dec. 264;) *Boyce* v. *Brockway*, 31 N. Y. 490; *Farmers, etc., Bank* v. *Logan*, 74 N. Y. 568; *Farmers, etc.,·Bank* v. *Atkinson*, 74 N. Y. 587; *Shepard* v. *Barnes*, 14 N. W. Rep. 110; *Williams* v. *Merle*, 11 Wend. 80, (25 Am. Dec. 604, 612, 613.)

The acceptance of the bills of lading, the making of advances thereon by the bank, and the transfer of the same by the bank to parties in Milwaukee and Chicago, was the exercise of such dominion, and amounted to a conversion. 2 Daniels on Neg. Inst. § 1731, *et seq.; Bank of Rochester* v. *Jones*, 4 N. Y. 497, (55 Am. Dec. 290;) *Cayuga Co. Nat. Bank* v. *Daniels*, 47 N. Y. 631; *Marine Bank of Chicago* v.

*Wright,* 48 N. Y. 1; *Nat. Bank of Green Bay* v. *Dearborn,* 115 Mass. 219; *Nat. Bank of Chicago* v. *Bayley,* Id. 228; *Newcomb* v. *Boston & Lowell R. Co.,* Id. 230; *Alderman* v. *Eastern R. Co.,* Id. 233; *Conard* v. *Atlantic Ins. Co.,* 1 Pet. 386, 445; *Dows* v. *Nat. Exchange Bank,* 91 U. S. 618; *The "Idaho,"* 93 U. S. 575; *First Nat. Bank of Cincinnati* v. *Kelly,* 57 N. Y. 34; *Dows* v. *Kidder,* 84 N. Y. 121; *Dodge* v. *Meyer,* 61 Cal. 405.

GILFILLAN, C. J. After the issues were made in this case the plaintiffs procured, on motion, from the court below, an order requiring the defendant Fairchild to make answer to certain written interrogatories prepared by plaintiffs for that purpose. The making of this order is alleged as error. The interrogatories were answered, but no use was made of the answers,—they were not introduced on the trial; so that, as that proceeding did not in any way affect the judgment appealed from, the error was without prejudice so far as concerned this appeal. We deem it proper, however, to say that there is no authority for such an order. The statute enables a party, by verifying his own pleading, to compel his adversary to answer or reply to it under oath, and to compel him to exhibit for inspection books, papers, and documents in his possession, and also to appear and testify in his behalf as a witness. These are the only means that the statute has provided to compel disclosures by the opposite party in lieu of the means which the system of pleading in the former court of chancery afforded by interrogatories appended to the bill or answer.

As to the merits, the facts, briefly stated, are: Up to June 2, 1883, one John Young owned a grain warehouse or elevator, at Kasson, and was engaged in the business of receiving into it, for storing, wheat of all grades from others, for which, as received, he issued to the parties depositing wheat the usual wheat warehouse receipts or tickets; and was also engaged in buying wheat on his own account, —all the wheat so deposited by others, and that bought by him, being commingled in the warehouse according to its grade, test, and condition; and he also bought up, as he had opportunity, the receipts or tickets so issued by him; that for some time prior to said June 2d he was accustomed to ship by railroad to market, at Chicago, and

there to sell, the wheat in his warehouse and so commingled, both that owned by himself and that held in store for others. The business of shipping it was conducted in this way: He placed the wheat on board the cars at Kasson; received from the railway company the usual bills of lading for it, in which the defendant the bank was named as consignee; drew his drafts for round sums in favor of the bank on the parties to whom the wheat so shipped was to be forwarded; procured the bank to discount the drafts, delivering them to it with the bills of lading. The bank thereupon, by defendant Fairchild, its cashier, indorsed the bills of lading in blank, indorsed the drafts to its correspondent at the place of destination of the wheat, and forwarded the bills and drafts attached together to such correspondent, with instructions to present the drafts for payment, and, if paid, to deliver them with the bills to the drawee in the drafts; and it was so done. The bank, through its officers, had, at all times, knowledge that Young was receiving wheat for storing and issuing receipts or tickets therefor, and mingling such wheat with that purchased by himself; but had no actual knowledge or notice of the actual condition of the storage accounts, or of the amount of the outstanding receipts or tickets, or of the amount of wheat in the elevator, or of the financial condition of Young.

Each of the plaintiffs had deposited wheat for storing in said warehouse, and received receipts or tickets therefor. After such deposits, so much wheat was taken out, shipped, and disposed of in the manner aforesaid, that on said second day of June there was not enough remaining to meet all such receipts or tickets outstanding and held by the plaintiffs and others than Young. On that day Young was insolvent, and made an assignment for the benefit of his creditors to defendant Fairchild, who accepted the trust, and took possession of the warehouse, and all the wheat remaining in it. Afterwards each of the plaintiffs presented to Fairchild his receipts or tickets for wheat, and demanded from him the amount and quality of wheat called for by them, at the same time tendering the amount due thereon for storage; and without taking any exception to the form or manner of such demands, he refused to comply with them. During the times aforesaid one John Fern was the agent and wheat inspector of Young,

and assisted him in operating said elevator, and managing the bu ness thereof, and in all the foregoing transactions.

On these facts (stated much more in detail in the findings of th court) the court below found as conclusions of law—*First*, that the refusal of Fairchild to deliver, on the demands made upon him, the part of the wheat then in his possession to which each of the receipts or tickets presented to him was entitled, amounted to a conversion thereof; *second*, that the acts of Fairchild, the bank, Young, and Fern, in the matter of shipping and disposing of the wheat as hereinbefore recited, amounted to a conversion by them of so much of said wheat as was required to meet the outstanding receipts or tickets, after applying the wheat on hand to that purpose; *third*, and that the bank and Fern, each of whom had receipts or tickets for wheat deposited, were not entitled to share in the wheat on hand.

The first of these conclusions is right. The objection made to it is that the demand was not good, because, as is claimed, it was for more than the ticket-holder was entitled to of the wheat then in the hands of Fairchild; that it was for the whole amount that each ticket called for, when it should have been only for the proportionate share of the wheat on hand which belonged to such ticket. But it was the best demand that the ticket-holders could make. They could not be expected to know the state of the warehouse accounts; how much wheat was on hand; and what amount of receipts or tickets were outstanding against it, and entitled to share in it. That is for the warehouseman to know when he is called on to deliver the wheat upon the tickets, which are *prima facie* entitled to all they call for. If, by reason of having just come into possession, Fairchild did not know, he would have been entitled, had he asked it, to a reasonable time to ascertain the share due on each ticket. But he unqualifiedly refused without asking for time. This constituted a conversion of the wheat on hand that belonged to the tickets presented.

No question is made that as to Young the second conclusion is right. As to the wheat covered by this conclusion, the bank and Fairchild, who acted as its cashier and agent, stand on the same footing. The question as to their liability is of great practical importance. If banks and bankers cannot take security through the bills of lading

ꞏon grain shipped, for the advances made by them to the shipper, not meddling with the grain itself, without becoming liable as for the conversion of the grain in case the title of the shipper fails, the risk attending such advances will be so great as will tend to deter parties from making them; and we apprehend that thereby the business of shipping grain to market will be seriously interfered with.

ꞏAs we understand the proposition of the respondents,—and the conclusion of the court below cannot be sustained by any other,— it is in effect this: that the bank being named as consignee in the bills of lading, its indorsement and delivery of them to the parties in Chicago, upon receiving the amounts of the drafts, was a sale of the wheat by it to those parties, and consequently a conversion. It is not necessary to decide, and we do not decide, whether, had the acts of the bank amounted to a sale, it would have been liable for a conversion. A bill of lading is a symbol of the property. The indorsement and delivery of it is a symbolical delivery of the property, but does not, of itself, constitute a contract of sale any more than does an actual delivery of the property. Either operates to pass the title, when so intended. The intention and purpose with which the indorsement and delivery are made, and any conditions attached to the transaction, are open to explanation by parol, just as in the case of the actual delivery of the property itself. *Security Bank* v. *Luttgen,* 29 Minn. 363, (13 N. W. Rep. 151.) Naming one as consignee in, or indorsing and delivering to him, a bill of lading may be shown by parol to have been intended as evidence of an absolute sale, a trust, a mortgage, a pledge, a lien, or a mere agency. *Bank of Rochester* v. *Jones,* 4 N. Y. 497, (55 Am. Dec. 290;) *Cayuga Co. Nat. Bank* v. *Daniels,* 47 N. Y. 631; ꞏ*Marine Bank* v. *Wright,* 48 N. Y. 1. The relation to the property of the parties named in it, or of the holder, and the purpose and effect of naming one as consignee in or indorsing and delivering the bill, are therefore not conclusively determined by the instrument itself, but may be shown by other evidence.

Resorting, then, to such other evidence, to all the circumstances attending the transaction, as found by the court below, it is apparent that there was no sale to, nor vesting of the absolute title in, the bank, so that it could pass it to any one else; and no sale nor dispo-

sition of the wheat, nor assumption of right to dispose of it, by the bank to the Chicago parties. Whatever right or interest was vested, or intended to be vested, in the bank, by naming it as consignee in the bills of lading, was only for a temporary purpose, to wit, to hold until the drafts should be paid, and as security for their payment. It acquired, as against Young, a special property in the wheat,—a power to receive and dispose of it at Chicago upon a certain contingent event, (to wit, non-payment of the drafts;) an event which never occurred, and a power which it never assumed to exercise. The special property and power ceased to exist as soon as the drafts were paid,—would have ceased to exist on such payment, even though the bank had still retained the bills. The special property and power were extinguished, and did not pass with the bills of lading. The bank had nothing that it could pass, the drafts being paid. Whatever interest or right the Chicago parties had in or to the wheat they got under, and held by virtue of, their arrangement or contract with the consignor, Young, and not through any contract with the bank. If they were agents to receive and sell the wheat, they were his agents; if they were purchasers, it was because they had purchased from him.

Had the bank, on payment of the drafts, indorsed and redelivered the bills of lading to Young, no one, we think, would claim that to be a sale or conversion, even though it had held them as a means of lien or security; and it is impossible to see how it alters the case that, on extinguishment of its lien or special property, it delivered them to a person indicated by him. Had it, without having any property in the wheat, transmitted and delivered them, by his direction or request, to such person, without being privy to any wrongful intent on the part of Young, that would not have been a conversion by it. In removing the wheat from the warehouse; in shipping it; in determining to whom it was destined at Chicago; who should pay the drafts and receive it; what such person should do with it; and what right they should have in respect to it,—the bank had no part. Those were the acts of Young. It merely took a lien upon it to secure the drafts, and, when the lien was satisfied, surrendered the evidence and means of enforcing it to the persons indicated by Young. That was not an appropriation or assumption of such dominion over

wheat, to the exclusion of the real owner, as amounted to a conversion by it.

What we have said as to the liability of the bank is in view of the finding that the bank had no knowledge in fact that Young was wrongfully disposing of the property of others. Had it known that fact, it would have been in the position of the defendant in *Dodge* v. *Meyer*, 61 Cal. 405, and it might have been a party to the conversion. As to the bank and Fairchild, the second conclusion is therefore wrong.

As to Fern, it is to be assumed that, knowing Young was wrongfully disposing of the property of others, he aided him in perpetrating the wrong. He was a party to the wrongful purpose and the wrongful act. He was Young's agent and wheat inspector, assisted him in operating the elevator and managing its business, and in all the transactions above set forth. He did not stand, therefore, in the position of an agent or servant, who, acting solely for his principal or master, and by his direction, and without knowing of any wrong, disposes of property which the latter has no right to dispose of. While all the authorities agree that knowledge of his want of title is not necessary to the liability of one who, without right, disposes of, or causes to be disposed of, the property of another, there is some difference between them as to the liability of the innocent agent or servant; the cases in New York holding that the conversion is his act, while those in Massachusetts hold that the conversion is to be deemed the act of the principal or master, and not that of the agent or servant. But we are not called on to determine the question; for none of the authorities deny that in a case where the agent or servant not only knows that disposing of the property is a wrong, but to some extent directs as well as performs it, he is to be deemed a party to the wrong. This was the position of Fern. As to him the second conclusion is correct.

The decision upon the third conclusion necessarily follows that upon the second. As to Fern, it is correct; as to the bank, erroneous.

The cause will be remanded to the court below, and it is directed to modify its judgment to conform to this opinion.

Upon a rehearing the following opinion was filed, May 4, 1886:

GILFILLAN, C. J.    The opinion in this case heretofore filed is based, as to the liability incurred by John Fern, on our understanding that the findings of fact show that, while assisting Young in sending off the wheat in the elevator, he knew that the latter was wrongfully disposing of the property of others.    The fact is not expressly and sufficiently stated in the findings, but other facts are stated, which, as seemed to us, the court below intended as equivalent to stating that fact.    On a rehearing of the parties as to that point, we think it may be that the court below did not so intend; and, in order that no injustice may be done through a misapprehension of the facts, the court below will amend the findings of fact by adding immediately after the following words in the findings heretofore made, to wit: "That during all said time one John Fern was the agent and wheat inspector of the said John Young, and assisted him in operating said elevator, and managing said warehouse business, and in all the transactions hereinafter set out,"—a statement whether, at the times of such transactions, and especially at the times of shipping the wheat of plaintiffs as complained of, said John Fern did or did not know that the wheat of depositors not belonging to said Young was being shipped, and did or did not know that the amount of wheat receipts outstanding exceeded the amount of wheat left after such shipments to meet such receipts; and if, as so amended, said findings shall state that said John Fern did, at said times, know such facts, then the court below will modify its judgment only as directed in the opinion heretofore filed.    But if, as so amended, the findings shall state that said John Fern, at said times, did not know such facts, then the court below will further modify its judgment so as to conform to the proposition that said Fern was not guilty of a conversion of the wheat, and was not debarred by his acts from claiming his proportionate share of the wheat in the hands of the assignee.    And, for the guidance of the court below in the matter, we hold the rule of law to be that an agent or servant who, acting solely for his principal or master, and by his direction, and without knowing of any wrong, or being guilty of gross negligence in not knowing of it, disposes of, or assists the

master in disposing of, property which the latter has no right to dispose of, is not thereby rendered liable for a conversion of the property.