EMMA J. VARNEY vs. HARRY F. CURTIS & another.

Middlesex.    November 11, 1912. — January 28, 1913.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Conversion.    Estoppel.    Pledge.    Words, "Conversion."*

If one to whom bonds have been entrusted by their owner for safe keeping wrong-
fully pledges them as security for his own debt to a pledgee who has had notice
of the rights of the owner, the taking of the bonds as such pledgee after such
notice is an exercise of dominion over them which constitutes a conversion of
the bonds as against their owner.

Where a woman entrusted to her son-in-law for safe keeping certain non-negotiable
registered bonds and certain negotiable bonds, and the son-in-law, after forging
indorsements upon the registered bonds, wrongfully pledged them and the
negotiable bonds to secure his own debt, in an action against the pledgee by such
owner of the bonds for their alleged conversion, it was *held*, that, even if the
plaintiff had been careless in entrusting her bonds to the pledgor for safe keep-
ing, which it did not appear that she was, this would not have helped the
defendant, as the plaintiff owed him no duty to keep her securities carefully.

Where one to whom bonds have been entrusted by their owner for safe keeping
wrongfully pledges them to a pledgee who has had no notice of the rights of the
owner, if the pledgee on payment of his claim in good faith returns the bonds
to the wrongful pledgor, he has committed no conversion; but if the pledgee
by direction of the wrongful pledgor in good faith delivers the bonds to a third
person as a new pledgee and takes from the new pledgee the amount of his
claim which the bonds were pledged to him to secure, he has taken part in
an act of dominion over the bonds for his own benefit, and the exercise of such
dominion is a conversion for which he is liable to the owner of the bonds.

Explanation by LORING, J., of the use of the term "conversion" in actions of
tort in the nature of trover.

LORING, J.    This is an action for the conversion of six Northern
Pacific Great Northern joint bonds (registered and non-negoti-
able), one Union Pacific bond (registered and non-negotiable),
two Wolfeborough water bonds (negotiable coupon bonds) and
one bond of the town of Wolfeborough (negotiable coupon bond),
all, with the exception of the last (which was for $200), being bonds
for $1,000.    The case was tried before Justice Schofield without a
jury.    He found for the plaintiff, and the case is here on excep-
tions to his refusal to give seven rulings asked for by the defendant.

So far as now material the facts found by the judge were as
follows: The plaintiff's husband died in February, 1902.    Some

of the securities here in question came to her under her husband's will and some of them had been owned by her before his death. Soon after her husband's death these bonds were delivered by the plaintiff to her son-in-law, Symonds by name, a stock broker, to be kept by him for her in his safe deposit box. In April, 1902, the son-in-law opened an account with the defendants for the purchase and sale of stocks and bonds on margin and delivered to them as security for that account *inter alia* four of the plaintiff's Northern Pacific Great Northern joint bonds with forged indorsements. In the last part of January, 1904, Symonds directed the defendants to transfer this account to Colton and Company. Pursuant to that direction the defendants, on February 1, 1904, delivered to Colton and Company all the stocks and bonds which they were then carrying on margin for Symonds, and the bonds held by them as security for that margin account (including these four bonds), on receiving from Colton and Company $10,515.54, the amount due to them from Symonds. In this connection the judge made the following finding and ruling: "The defendants in making delivery to E. S. Colton and Company knew that the bonds previously held by them as collateral would be held by Colton and Company as collateral, and intended that result. The court, in so far as it is a question of fact, finds as a fact, and in so far as it is a question of law, rules as matter of law, that such a delivery by the defendants was more than a mere transfer of physical possession of the bonds to Colton and Company, by order of Symonds. It was a transfer of possession of bonds which they held as collateral with the intention that the transferees should also hold them as collateral. The court also finds as a fact that the defendants were not obliged to make such a delivery in the performance of any duty which they owed to Symonds by contract as bailees or pledgees under him. They did it voluntarily in pursuance of his instructions and as the means of obtaining payment of the debt he owed to them. They had no knowledge or notice that the plaintiff was the true owner of the bonds, but the court rules that the act of delivery to Colton and Company with the intention above stated was an exercise of ownership, in exclusion of the rights of the true owner, an act of dominion, and a conversion."

On March 14, 1904, Symonds opened another margin account

with the defendants and deposited as security for that account another Union Pacific Great Northern joint registered bond belonging to the plaintiff, with a forged indorsement. A month and one half later, to wit, on April 30, he deposited two registered bonds with forged indorsements (the Union Pacific bond and a Northern Pacific Great Northern) and two coupon bonds (one Wolfeborough water bond, and one Wolfeborough town bond for $200), and on May 2 he deposited with the defendants another Wolfeborough water bond (a coupon bond), all the property of the plaintiff. The judge found that by reason of what happened between March 14, when this account was opened, and April 30, on or after which day the securities last mentioned were deposited, the defendants took with notice all the bonds deposited as security for the second account except the non-negotiable Northern Pacific Great Northern bond deposited on March 14, and were not purchasers of those bonds in good faith.

On May 7 or 9, at Symonds's request, the defendants delivered to Berry and Company the securities then being carried by them in the second margin account and the bonds held as security for that account, and received from Berry and Company a check for $11,237.13, the balance due from Symonds on that account. The judge ruled "that the act of the defendants in taking the bonds into their possession from Symonds with notice, intending to hold them as pledgees, was in itself an exercise of dominion over them in denial of the rights of the true owner, and a conversion," and made "the same findings of fact and rulings of law in regard to the two transfers of account." The judge found that Berry and Company became bankrupt and that the bonds received by Colton and Company were sold by them and no part of the proceeds came to the plaintiff. He found for the plaintiff for the sum of $7,022.94, the value of the ten bonds after deducting the value of four bonds recovered from the assignees of Berry and Company. The only exceptions taken by the defendants were to the refusal of the judge to give the seven rulings asked for by them.

1. The first ruling asked for * could not have been given, because the judge found as a fact that all the bonds (except one)

---

* The first ruling asked for was in these words: "Upon all the evidence the plaintiff Emma J. Varney is not entitled to recover, and the verdict is to be for the defendants."

deposited with the defendants as security for the second account were taken by them with notice. There can be no question but that the judge was right in ruling "that the act of the defendants in taking the bonds into their possession from Symonds with notice, intending to·hold them as pledgees, was in itself an exercise of dominion over them in denial of the rights of the true owner, and a conversion." There was evidence which amply warranted the judge in making the finding of fact that the defendants took these bonds with notice. Indeed the defendants have not argued that there was not. The exception to the refusal to give this ruling must be overruled.

2. The sixteenth ruling asked for * was rightly refused because: (first) as matter of law the judge was not bound to find (if indeed he could have found) that the plaintiff was careless in entrusting her bonds to Symonds for safe keeping; and (secondly) even if she was careless in so doing she would not have been negligent. She owed no duty to the defendants to keep her securities carefully, and so as against them she was not negligent if she kept them carelessly. An owner who keeps his securities in a careless manner does not lose his property in them nor his rights of action founded thereon. That was decided in *Shepard & Morse Lumber Co.* v. *Eldridge,* 171 Mass. 516. It is to be borne in mind that these bonds were not indorsed by the plaintiff, as was the case in *Scollans* v. *Rollins,* 173 Mass. 275; *S. C.* 179 Mass. 346. Had the plaintiff entrusted these bonds to Symonds indorsed by her a different question would have been presented.

3. The twenty-first and twenty-second rulings asked for † are

---

* The sixteenth ruling asked for was in these words: "16. If the court finds upon all the evidence that the plaintiff entrusted the bonds in question or any of them to George E. Symonds and gave him full possession and control of the same, and the said George E. Symonds misappropriated the said bonds and gave them to the defendants as collateral security for certain purchases of stock, then the plaintiffs were negligent in their care of the said bonds and are estopped from claiming same or the value of the same from the defendants."

† The twenty-first and twenty-second rulings asked for were in these words: "21. The delivery of the bonds to Colton & Company by the defendants in accordance with the directions of the plaintiff's agent, George E. Symonds, was equivalent to a return of the said bonds to George E. Symonds and therefore constructively a return to the plaintiff and for such bonds the plain-

based on *Loring* v. *Mulcahy*, 3 Allen, 575, and *Leonard* v. *Tidd*, 3 Met. 6, and the contention is that this case comes within those decisions.

It is settled that where a bailee receives on deposit goods from one in possession but without title to them, and afterwards restores them to the possession of the bailor in ignorance of the rights of the true owner, he is not guilty of a conversion. *Loring* v. *Mulcahy*, 3 Allen, 575. *Hill* v. *Hayes*, 38 Conn. 532. *Steele* v. *Marsicano*, 102 Cal. 666. *Nelson* v. *Iverson*, 17 Ala. 216. *Frome* v. *Dennis*, 16 Vroom, 515. For other cases where the temporary use of the property of another made by a defendant acting in good faith under a mistake of fact has been held or said not to be a conversion, see *Strickland* v. *Barrett*, 20 Pick. 415; *Wellington* v. *Wentworth*, 8 Met. 548; *Spooner* v. *Manchester*, 133 Mass. 270; *Shea* v. *Milford*, 145 Mass. 525; *Gurley* v. *Armstead*, 148 Mass. 267.

It is pointed out in Pollock on Torts, 374, in connection with this rule, that a bailee under those circumstances is estopped to deny the title of the bailor. That means that in returning the goods to the bailor the bailee does no more than perform the duty he owes to the bailor. He cannot be guilty of a conversion for doing that.

In *Leonard* v. *Tidd*, 3 Met. 6, this principle was applied in a case where the defendants acting in good faith received as security for a debt due to them from the pledgor a gun, the property of the plaintiff which was in the possession of the pledgor, and returned the property pledged to the wrongful pledgor upon payment of the debt due them from him. For a similar decision see *Spackman* v. *Foster*, 11 Q. B. D. 99. The reasoning on which the decision in *Spackman* v. *Foster* went was that although the pledgee in such a case claims to hold the property as against the wrongful pledgor until the debt due him from the wrongful pledgor is paid, so far

---

tiff is not entitled to recover, it being agreed that the bonds had not depreciated during the period that the defendants held the same.

"22. The delivery of the bonds to Berry and Company by the defendants in accordance with the directions of the plaintiff's agent, George E. Symonds, was equivalent to a return of the said bonds to George E. Symonds and therefore constructively a return to the plaintiff and for such bonds the plaintiff is not entitled to recover, it being agreed that the bonds had not depreciated during the period that the defendants held the same."

as appears he does not claim to hold the property pledged as against the true owner. The same reasoning was adopted in *Loring* v. *Mulcahy, ubi supra.* That is to say, in such a case, so far as the true owner is concerned the pledgee is in possession under one to whom the true owner had given possession, and by returning the pledged property to the wrongful pledgor the pledgee does nothing more than perform the duty he owes the wrongful pledgor under the circumstances in effecting a restoration of the original *status in quo,* to wit, in putting back the property into the possession of the wrongful pledgor where originally it had been put by the true owner.

But in the case at bar the plaintiff's bonds, which the defendants received in good faith from Symonds in whose possession the plaintiff had put them, were not returned to Symonds. On the contrary they were delivered by Symonds's direction to persons who to the defendants' knowledge were lending money to Symonds on the security of the bonds. That is to say, the defendants in place of restoring the bonds to Symonds delivered them to a third person in obedience to a subsequent act on the part of Symonds which was an act of ownership and not of mere possession.

The question whether under those circumstances the pledgor is guilty of a conversion has not arisen in this Commonwealth. In *Leonard* v. *Tidd,* 3 Met. 6, the gun was not delivered by the pledgee to the purchaser from the wrongful pledgor. In that case the wrongful pledgor "took the gun from a room in the defendant's house, and delivered it to Pratt," the purchaser from the wrongful pledgor. See 3 Met. at p. 7. That is to say, the sale in that case was made by the wrongful pledgor and the gun was taken from the pledgee by the wrongful pledgor and delivered by him to the purchaser. All that the defendant did was to take the proceeds of the tortious sale. That is not a conversion. See *Polley* v. *Lenox Iron Works,* 2 Allen, 182. In *Parker* v. *Lombard,* 100 Mass. 405, there was no delivery by the bailee in obedience to a subsequent act of dominion exercised by the bailor. In that case the bailee delivered the goods to the person who was entitled to receive them under the instructions given him by the bailor when the original bailment was made. In other words, that was a case where the bailee delivered the goods to the person in whose behalf the bailee was told the bailment was made when it was made.

The authorities on this question outside of Massachusetts are in conflict.

Blackburn, J., in answering the question proposed to the judges by the House of Lords in *Hollins* v. *Fowler,* L. R. 7 H. L. 757, 767, gave it as his opinion that if the bailee in such a case "could have been fixed with knowledge that more was done than merely changing the custody, and knew that the company's servants [*i. e.* servants of the bailee] were transferring the property from one who had it in fact to another who was going to use it up, the question would be nearly the same as that in the present case." In the "present case" Blackburn, J.'s answer to the question put to the judges was that the defendant was guilty of a conversion. The decision in *Hudmon Brothers* v. *DuBose,* 85 Ala. 446, goes further. In *Hudmon Brothers* v. *DuBose* it was held that a warehouseman who delivered cotton stored with him not to the bailor but to the holder of the storage receipt issued to the bailor when the cotton was put in storage, was guilty of a conversion without its being shown that knowledge had been brought home to the warehouseman that more was being done than "merely changing the custody." Somerville, J., in delivering the opinion in that case, said that what may be for convenience called the rule of *Leonard* v. *Tidd* "does not include a restoration of the bailor's dominion by an act, the essential nature of which is in defiance of the true owner's title, or the probable consequence of which will be to put the property beyond his reach."

On the other hand a contrary conclusion was reached in *National Mercantile Bank* v. *Rymill,* 44 L. T. (N. S.) 767, and in *Leuthold* v. *Fairchild,* 35 Minn. 99. In *National Mercantile Bank* v. *Rymill,* an auctioneer who had received for sale from one in possession of the same, horses and a harness, delivered them to one who to his (the auctioneer's) knowledge had bought them of the bailor. In that case the auctioneer received the purchase money from the purchaser and after deducting his commission paid the balance to the bailor. In *Leuthold* v. *Fairchild,* a bank which had discounted a draft to which was attached a bill of lading for wheat shipped to the drawee delivered the bill of lading to the drawee on payment of the draft. The decision in *National Mercantile Bank* v. *Rymill,* 44 L. T. (N. S.) 767 (and not reported elsewhere) was a decision of the Court of Appeals made in 1881 by Bramwell,

Brett and Cotton, L. JJ.   That case seems to have been argued by the plaintiff solely on the ground that it was governed by the decision in *Cochrane* v. *Rymill*, 40 L. T. R. (N. S.) 744, where the sale was made by an auctioneer who had made advances on the goods sold.   The opinion of Blackburn, J., in *Hollins* v. *Fowler*, *ubi supra*, was not alluded to.   Bramwell, L. J., in his opinion in *National Mercantile Bank* v. *Rymill*, puts as decisive of the case then to be decided the case of a thief who deposits a stolen portmanteau at the cloak room of a railway station and gets it back through an accomplice to whom he hands the ticket which he had received when the portmanteau was deposited.   There is a later case to the same effect in England decided by Day, J., *Turner* v. *Hockey*, 56 L. J. (Q. B.) 301 (and not elsewhere reported). As to these two cases see *Consolidated Co.* v. *Curtis & Son*, [1892] 1 Q. B. 495, 501.   The reasoning on which *Leuthold* v. *Fairchild* was decided is contained in this statement: "It [the bank] merely took a lien upon it to secure the drafts, and, when the lien was satisfied, surrendered the evidence and means of enforcing it to the persons indicated by Young.   That was not an appropriation or assumption of such dominion over the wheat, to the exclusion of the real owner, as amounted to a conversion by it."   It is apparent that the question on which the determination of these two cases depended was not considered.

We are of opinion that the defendants in the case at bar were not guilty of a conversion when they received in good faith the plaintiff's bonds (which they did receive in good faith) as security for the debts due them from Symonds.   If they had returned the bonds to the possession of Symonds (with whom they originally found the bonds) on being paid by Symonds the debts due them from him, they would have done nothing more than perform the duty owed by them as pledgees to Symonds as pledgor in the absence of knowledge of the rights of Mrs. Varney, the true owner. But they did not return the bonds to the possession of Symonds, as they were bound to do in the absence of knowledge as to the true ownership, on being paid the debts due them from him. On the contrary under the direction of Symonds they delivered the bonds to persons who to their knowledge were lending to Symonds on the security of the bonds the amount owned them by Symonds.   They knew that Symonds was exercising a subsequent

act of dominion over the bonds; they had an interest in having that act of dominion carried through; and they aided Symonds in carrying through that act of dominion by delivering the bonds to Colton and Company and Berry and Company in order to secure payment in that way of the debts owed them by Symonds.   The subsequent act of dominion was a conversion, and in that conversion the defendants participated for the purpose of forwarding their own interests.   The case therefore is not only a stronger case than *Hudmon Brothers* v. *DuBose*, 85 Ala. 446, where the defendant had no knowledge and no interest, but it is a stronger case than the case put by Blackburn, J., in *Hollins* v. *Fowler*, L. R. 7 H. L. 757, where the defendants had knowledge but no interest.   It is also a stronger case than the case of *Hiort* v. *Bott*, L. R. 9 Ex. 86.   In that case one Grimmett, to defraud the plaintiff of certain barley, professed to buy it on behalf of the defendant, to whom by Grimmett's direction it was shipped, deliverable to consignor or consignee.   After the barley had arrived at its destination, Grimmett procured an order for its delivery from the defendant on the plea that it was sent to him by mistake and that such an order would cure the mistake.   This was held to be a conversion on the ground that it was an unauthorized act by which the plaintiff lost the barley.   In the words of Bramwell, B., "This was assuming a control over the disposition of these goods, and a causing them to be delivered to a person who deprived the plaintiff of them."   For a similar decision see *Knapp* v. *Guyer*, 75 N. H. 397.   In the case at bar the defendants, by an unauthorized act, undertook to control the disposition of the plaintiff's bonds and delivered them to persons who deprived the plaintiff of her property.   That makes them guilty of a conversion of them.

It is not out of place to point out again what before now has been said several times (see for example Martin, B., in *Burroughes* v. *Bayne*, 5 H. & N. 296; Bramwell, B., in *Hiort* v. *Bott*, L. R. 9 Ex. 86, 90), namely, that the terms "conversion" and "converting to his own use" are misleading and unfortunate terms.   As was said by Collins, J., in *Consolidated Co.* v. *Curtis*, [1892] 1 Q. B. 495, 498, "The difficulty is diminished by remembering that in trover the original possession was by a fiction deemed to be lawful (per Martin, B., in *Burroughes* v. *Bayne*, 5 H. & N. at p. 301, and per

Lord Mansfield, C. J., in *Cooper* v. *Chitty,* 1 Burr. at p. 31), and some act had therefore to be shown constituting a conversion by the defendant of the chattel to his own use, some act incompatible with a recognition on his part of the continuous right of the true owner to the dominion over it." It was from this allegation of a fictitious finding by the defendant that the action got its name of trover. 3 Bl. Com. 152, 153. The declaration in trover and conversion alleged the ownership of the plaintiff, a "casual" loss by him and a finding by the defendant. It then alleged that after thus coming lawfully into possession of the goods the defendant "converted and disposed of the said chattels to his own use." See for example 2 Chitty, Pl. (2d London ed.) 371, 372. It might perhaps have been better if the terms "conversion" and "converted to his own use," which were brought in by the allegation of a fictitious loss and finding, had been given up when that allegation was given up, and a plainer statement of a tortious act on the part of the defendant by which the plaintiff lost his goods had been substituted.

We are of opinion that the delivery of the bonds to Colton and Company and to Berry and Company were not "equivalent to a return of the said bonds to George E. Symonds," and the twenty-first and twenty-second rulings asked for were properly refused.

4. No argument either at the bar or on the brief has been made in support of the three other rulings asked for. The defendants however have contended that they should have been given. Under these circumstances it is enough to say that we find that no error was committed by the judge in refusing to adopt them.

5. The defendants have argued some points of law not raised by the rulings asked for. For that reason we have not discussed them. It is not improper to add that we should have found that no error had been committed by the judge had the questions argued been raised.

*Exceptions overruled.*

*H. H. Bond,* for the defendants.
*G. L. Mayberry,* for the plaintiff.