[No. 19311.   Department One.   January 21, 1926.]

GUS PACCOS, *Respondent*, v. BENJAMIN ROSENTHAL, *Defendant*, GEORGE CARROLL *et al.*, *Appellants.*[1]

[1] HUSBAND AND WIFE (29)—WIFE'S SEPARATE ESTATE—LIABILITY—CONTRACTS JOINTLY WITH HUSBAND.  Where money was paid to indemnify a husband and wife as sureties upon bail bonds, and they failed to return it upon being exonerated, the wife, personally obligated on the bonds, is individually liable for failure to return the money.

[2] BAILMENT (6)—RIGHTS OF BAILOR AS TO THIRD PERSONS.  Sureties upon a bail bond, to whom the principal had delivered money for their security (which money had been loaned to him by a third person after bail) are not guilty of conversion of the money in paying it back to the principal, in case they did so before demand by, and without knowledge that it belonged to, the third person.

Appeal from a judgment of the superior court for King county, Ronald, J., entered November 29, 1924, upon the verdict of a jury in favor of plaintiff, in an action in tort.   Reversed.

*Allen & Griffith,* for appellants.

*Burton E. Bennett,* for respondent.

FULLERTON, J.—This is an action by the respondent Paccos against the defendant Rosenthal and the appellants Carroll to recover for the wrongful appropriation of money.  The facts giving rise to the controversy are in substance these:  On November 1, 1921, the defendant was arrested on a warrant issued out of the United States district court, in which bail was fixed in the sum of $500.  The defendant requested the respondent to furnish the bail, and the respondent, in compliance with the request, gave to the defendant's attorney $500 in

[1]Reported in 242 Pac. 651.

cash, which the attorney deposited with the court as the money of the defendant as such bail. On January 26, 1922, the defendant was again arrested on a warrant issued out of the same court, in which bail was fixed in a like amount, and he again requested the respondent to furnish the bail. This time the respondent visited the defendant personally when in jail, and, while there, handed him $500, which the defendant deposited in his own name as bail. On February 4, 1922, the defendant was arrested on a warrant issued out of the state court charging him with crime. In this proceeding his bail was fixed at $750. The respondent was called on to furnish bail in this proceeding, and for that purpose handed the defendant $750 in cash. This sum the defendant deposited in his own name in that court as bail.

Later on, the respondent desired to use the money he had thus advanced, and consulted with the defendant as to the means by which it could be withdrawn. The defendant in turn consulted with his attorney, who suggested that surety bonds be substituted in lieu of the money. It seems that forms of bonds looking to this end were prepared, in which the respondent was named as surety. These, however, he declined to execute, giving as his reason that he could not qualify, as he owned no real property. The defendant then looked elsewhere for sureties and finally procured bonds executed by the appellants Carroll, and one Secord, as sureties. These were accepted by the public authorities in lieu of the cash, and the several sums of money deposited were returned by checks payable to the defendant. It was probably the thought of the defendant that he would be at liberty to return the money to the respondent, but to this the appellants objected, insisting on the right to retain the money as security for the obligation as-

sumed by them in executing the surety bonds. The defendant thereupon indorsed the checks and turned them over to the appellants, who subsequently cashed them.

This transaction occurred in the latter part of March, 1922, and, sometime later, the sureties were exonerated from liability on the bonds. After the exoneration of the sureties, the respondent made demand upon the defendant and the appellants for a return of the money. His demand being refused, the present action was instituted. Issue was taken on the allegations of the complaint and a trial was had before a jury, resulting in a verdict and judgment in favor of the respondent against the defendant and the Carrolls. The Carrolls appeal.

[1] For the major part, we find no error in the assignments. There was a conflict in the evidence as to who owned the money advanced, and as to whether the appellants had returned it to the defendant, but these were questions for the jury to resolve, and we see no reason for disturbing their findings. The objection that no personal judgment should have been entered against Mrs. Carroll, we likewise think is not well taken. She obligated herself personally on the bonds, and it was through the means of these that the money was obtained. If it is the property of the respondent, and if it has not been returned to him by the appellants, or to some one who was authorized to receive it, she is personally responsible for its loss to the respondent. The assignment, that the court erred in refusing to grant a new trial, is rendered nugatory by the conclusion we have reached on another branch of the case, and does not require discussion.

Among the defenses interposed in the answer to the complaint, was the defense that the appellants, as soon as they had been exonerated from liability on the surety

bonds and before any demand had been made upon them for a return of the money by the respondent, returned the money to the defendant. ·Their evidence, admitted without objection, tended to substantiate the defense. There was, however, evidence tending to show that the appellants knew at the time they took it from the defendant, and at the time they returned it to him, that the money had been advanced by the respondent, and was to be returned to him when the purposes of its advancement had been accomplished. On this branch of the case the court gave to the jury the following instructions:

"Now, as to the case against the defendants Carroll, I instruct you that, if the plaintiff advanced or loaned the money to Rosenthal for bail, upon condition that the same was to be returned when the cases against Rosenthal were disposed of, and if Carroll received the money and still holds it unaccounted for, or if, having received it, he returned it to Rosenthal with knowledge on Carroll's part at the time of such return that plaintiff had advanced it and was to receive it back when the cases were disposed of, then Carroll will be liable for $1739.20.

"If, however, the money was never advanced by plaintiff, or even if it was advanced or loaned by plaintiff, yet if Carroll returned it to Rosenthal without knowledge of the fact that plaintiff had advanced it on condition of receiving it back upon disposition of the cases, then Carroll would not be liable. ·

"The burden of proof is on the plaintiff, and before he can recover against the defendants Carroll he must show by the greater weight of the evidence in the case the following facts:

"(1) That he advanced as a loan to Rosenthal the bail money upon condition that it was to be returned to him when the cases for which bail was given were disposed of.

"(2) That Carroll still holds the money, or that, when he paid it over to Rosenthal, he did so with knowl-

edge on Carroll's part of the fact that the plaintiff had so loaned it on such condition.

"If plaintiff has satisfied you by the greater weight of the evidence of both the foregoing facts, then he will be entitled to recover from Carroll the amount before stated. If he has failed to satisfy you of either one of the foregoing facts, then he cannot recover any sum against Carroll."

By these instructions, it will be noticed, the jury were told that, if the appellants received the money from the defendant and returned it to him with knowledge that it belonged to the respondent, they were liable to the respondent for it, even though the return was made before any demand had been made upon them by the respondent for it.

[2] The appellants complain of this part of the instructions, we think, justly. Where property is bailed by one person to another, it is not the rule that every person who interferes with the property bailed is liable to the bailor for the property, if it is not returned by the bailee. That result can only follow when the interference in some way injures the property or prevents its return; this, on the principle that wrongs, to be actionable, must result in injury to the party wronged. Manifestly, we think, if, in this instance, the respondent loaned money to the defendant for a specific purpose, to be returned when the purpose of its loaning was accomplished, and the defendant turned it over to the appellants temporarily, and the appellants returned it to the defendant before any demand was made upon them for its return, the appellants cannot be liable to the respondent for it. The act caused him no injury. It neither destroyed nor injured the bailed property, nor did it prevent the bailee from returning it at the time its return was due. The respondent, in other words, had all of the rights with respect to the money

after the claimed interference therewith by the appellants, that he would have had had there been no such interference, and, having lost nothing by it, he can claim nothing because of it. As was said in *Nelson v. Iverson,* 17 Ala. 216:

"It cannot be the law, that if the way-faring man stop at my house and I extend to him the usual civilities and courtesies of life, feed his horse and take charge of his baggage, that after I have restored to him his horse and baggage, without notice or demand of the true owner, I should be liable in detinue or any other action for the property thus temporarily in my possession. The application of such a principle, as has been justly remarked, 'would bring about a state of distrust and suspicion tending to destroy the courtesies of life, and to clog the business transactions of society.'—Per Underwood, J., dissenting, 1 Dana's Rep. 122. We take the true doctrine to be this: If the bailee have the temporary possession of property, holding the same as the property of the bailor and asserting no title in himself, and in good faith in fulfilment of the terms of the bailment, either as expressed by the parties or implied by law, restores the property to the bailor before he is notified that the true owner will look to him for it, no action will lie against him, for he has only done what was his duty."

The respondent cites the case of *Varney v. Curtis,* 213 Mass. 309, 100 N. E. 650, Ann. Cas. 1914A 340, L. R. A. 1916A 629, as sustaining the rule announced by the trial court. In that case it appeared that one Symonds held bonds for safe keeping and pledged them, with a forged indorsement, to others to secure advancements made to him by those others. The pledgees assigned them to a third person, on the direction of Symonds, who paid to the pledgees the advancements. The court held the pledgees liable, but it did so because the pledgees were without title to the bonds, and because through their act they were lost to the true

owners. That the court did not mean to say that the pledgees would have been liable had they returned the bonds to the pledgor with mere knowledge that they were not the property of the pledgor, we think, is evidenced by the following excerpt from the opinion:

"We are of opinion that the defendants in the case at bar were not guilty of a conversion when they received in good faith the plaintiff's bonds (which they did receive in good faith) as security for the debts due them from Symonds. If they had returned the bonds to the possession of Symonds (with whom they originally found the bonds) on being paid by Symonds the debts due them from him, they would have done nothing more than perform the duty owed by them as pledgees to Symonds as pledgor in the absence of knowledge of the rights of Mrs. Varney, the true owner."

It is true the court qualifies its more general statement by saying that the pledgees would not be liable, if the bonds were returned to the pledgor without knowledge of the "rights" of the true owner, but a reading of the opinion in its entirety will show, we think, that the court meant by this, knowledge that the indorsement had been forged and that the pledgor intended to deprive the true owner of the bonds.

But we think the instruction wrong, when applied to the facts of the present case, for another reason. The respondent did not deposit the money with the court as his own, but gave the money to the defendant for the purpose of enabling him to procure bail. There were no special directions given as to the manner of its use for the purpose, and when the defendant used it as security for bondmen, it was but using it for the purposes for which it was intended. In other words, there was no breach of the contract under which the money was bailed to the defendant, and, if the appellants returned it to the bailee before any demand was made upon them for it by the owner, they were not guilty of

its conversion, and no recovery against them can be had, notwithstanding they may have known of the respondent's ownership.

The judgment is reversed and the cause is remanded for a new trial.

TOLMAN, C. J., MAIN, and HOLCOMB, JJ., concur.