ELIZA FERN, Executrix *vs.* JACOB LEUTHOLD and others.

September 14, 1888.

**Estates of Decedents—What Claims are Barred unless Presented to Probate Court.**—Every claim proper to be allowed by commissioners, which is not presented for allowance within the time limited by the probate court for that purpose, is barred, unless within the provisions of Gen. St. 1878, c. 53, § 16, by reason of the pendency of an action upon it against the deceased at the time of his death.

**Same—Exception of Claims in Litigation—Scope of Exception.**— To bring it within this section, the specific claim or cause of action must be in litigation at the time of the debtor's decease. It is not enough that an action for another purpose was pending against him. It is only a claim in actual litigation at the time of his decease that can be paid without being proved in the probate court.

**Same—Effect of Judgment.**—The character of the judgment finally rendered will not preclude inquiry as to the nature and *status* of an action pending at the time of the debtor's death, in order to determine whether a particular claim was then in litigation.

Appeals by Eliza Fern, as executrix of John Fern, deceased, from two judgments of the district court for Dodge county, *Buckham, J.,* presiding, affirming an order of the probate court of the same county vacating the decree of distribution of the estate of John Fern, and directing the executrix to pay certain judgments in favor of Jacob Leuthold and others, upon whose application the order was made, and who are respondents in this appeal.

*Chas. C. Willson,* for appellant.

*Robert Taylor,* for respondents.

MITCHELL, J. One Young, a warehouseman, having received in store the wheat of various parties, which was mixed in common mass, had disposed of a part of it to the Bank of Kasson, through one Fairchild, its cashier. Among the alleged depositors who claimed an interest in the grain was one Fern, who was in Young's employment in his warehouse. There not being enough grain on hand to pay off the outstanding receipts, in June, 1883, eight of the depositors brought suit against Young, the Bank of Kasson, Fairchild, and Fern, alleging in their complaint that part of the stored grain had, by an arrangement between Young and Fairchild, (the latter acting for the bank,) been shipped out and delivered to the bank. The relief sought was an accounting of all grain stored with Young, and of all outstanding receipts against it; that the rights of the respective depositors in the grain be adjusted; that Fairchild and the bank be compelled to account for the wheat wrongfully converted, and for the proceeds; and that the plaintiffs have judgment against the bank and Fairchild for any balance due them after the application of the wheat remaining on hand; and that Fern be excluded from sharing in the wheat or its proceeds until the plaintiffs were paid in full; and that they have such other and further relief as to the court might seem just. In the amended complaint, served after Fern's death, there is an allegation that Fern was the agent and wheat inspector of Young, and "aided him in operating said elevator, and managing said warehouse business, and in all the transactions herein set out;" but in the original complaint there is no allegation whatever as to his relation to or connection with the business, except that he was the wheat inspector who issued, as Young's agent, tickets for the wheat stored, and that the wheat that had been disposed of had been shipped out and delivered to the bank with Fern's knowledge and consent. In April, 1884, Fern died, and on June 2, 1884, his widow, the appellant here, was appointed his executrix; the probate court allowing her one year within which to settle the estate, and allowing creditors six months in which to present claims against the estate, of which due notice was given in accordance with the order of the court. On August 22, 1884, on motion of the plaintiffs, the district court made an order substituting the executrix as defendant in place

of Fern, deceased, and bringing in six other depositors as parties defendant. In October, 1884, several other depositors were also, on motion of the plaintiffs, joined as defendants. A joint answer was interposed for Fairchild, the bank, and Mrs. Fern, by the same counsel who had appeared for Fern in his life-time. The material part of this answer, so far as Mrs. Fern was concerned, was a claim of an interest in the stored wheat as a depositor, by virtue of wheat receipts which she held as executrix. The depositors who had been brought in as defendants answered, admitting the allegations of the complaint, and demanding their share of the wheat, and judgment against Fairchild and the bank for the value of the wheat converted to the amount necessary to pay them in full. While this action was thus at issue, in December, 1884, and after the time for the presentation of claims against Fern's estate had expired, the executrix presented to the probate court her final account, accompanied by a petition stating that she had fully administered the estate, and paid all the debts; and praying that a time be fixed for the examination and allowance of her account. The court made an order fixing January 5, 1885, as the time for the hearing, of which notice was given by publication in accordance with the order of the court. On the hearing the court examined the account, and, there being no adverse appearance, made an order allowing and finally settling the account as filed; and on the same day made a final order of distribution, assigning the residue of the estate to those entitled to it, who were the widow and minor children. None of the depositors, respondents here, had ever presented to the probate court any claim against the estate. In March, 1885, the cause in the district court was tried, and judgment rendered, after distributing the proceeds of the wheat on hand, against Young, Fairchild, the bank, and Fern's estate, for the value of the wheat shipped out and disposed of to the bank. On appeal to this court, the judgment was reversed as to the bank and Fairchild, but affirmed as to Young and Fern's estate; but subsequently remanded to the court below, with instructions to make more specific findings as to Fern. *Leuthold* v. *Fairchild,* 35 Minn. 99, (27 N. W. Rep. 503, and 28 N. W. Rep. 218.) These findings were made and judgment rendered January 4, 1887, as before, against

Fern's estate, and in favor of the depositors, both plaintiff and defendant. On January 8, 1887, these depositors filed a copy of this judgment with the probate court, asking that the decree of distribution in Fern's estate be vacated, and the executrix ordered to pay the judgment. The court granted both orders, which, upon appeal to the district court, were affirmed; and from this the present appeals are taken to this court.

The grounds upon which these orders were asked for and granted were that the decree of distribution was obtained by the executrix by fraud and misrepresentation in stating that she had fully administered the estate, and paid all the debts, when in fact a suit on these claims, which was pending against her husband at the time of his death, was still undetermined; and that any neglect or inadvertence on part of the petitioning creditors was excusable, they having no personal knowledge that any such decree had been asked for or granted until a few days before their application to have it vacated.

Much of the argument of counsel was directed to the question of the power of the probate court, in any case, to vacate a final decree of distribution after the lapse of two years. We do not find it necessary to decide this question, nor to consider it further than to say that while there is now no question as to the power of the probate court, in certain cases, to vacate its orders, yet the exercise of this power, even in the absence of any statutory limitation, is subject to certain settled principles; and the action of the court, if not authorized by those principles, is subject to review and reversal. And while we do not think that a final decree of distribution of itself causes the estate to so pass out of the court, and beyond its jurisdiction, as to deprive it of power to set the decree aside if obtained by fraud, or erroneously rendered by inadvertence, yet it would require a strong case to warrant a court in doing so after the lapse of two years. In the present case there is nothing to indicate that the executrix was guilty of any fraud or intentional misrepresentation. She testifies that she never knew that any suit was pending against her husband when he died, and never heard that these creditors made any claim against him, or against his estate, until April, 1886. There is nothing in the record to contradict her statements. It does not appear that no-

tice of any kind was served on her personally of the order of the court making her a party to the suit; and the answer interposed in her behalf might have been interposed by the counsel for her deceased husband without advising with her, especially as she was not a principal defendant in the case. Nor, had she known of the pendency of the action, was there anything in the pleadings at all suggestive of the fact that the plaintiffs made any such claim against her husband as they now make. On the other hand, the respondents fail to present any very good excuse for their long delay in discovering the existence of this decree. If they had an action on their claims pending against Fern at the time of his death, there would be no necessity for presenting them to the probate court for allowance in order to make them payable out of the estate. *Berkey* v. *Judd*, 27 Minn. 475, (8 N. W. Rep. 383.) But they knew that the estate was in process of administration. The litigation in the district court was protracted far beyond the time usually allowed for the settlement of estates. They and their counsel were residents of the county in which the administration of the estate was being had, and yet during the time it was being administered, and for two years afterwards, it would seem they never interested themselves in the matter enough to ascertain what was being done. Ordinary prudence would certainly have suggested that they ascertain what was being done with the estate, and, if any steps were being taken that might prejudice their rights, to call the attention of the probate court to the pendency of their suit, so that administration might not be finally closed until the cause was determined. But we are not fully prepared to decide that the judgments appealed from should be reversed on these grounds.

We think, however, they must be reversed on the ground that the respondents had no standing in court as creditors; having neither presented their claims for allowance to the probate court within the time limited for that purpose, nor having any suit pending on them against Fern at the time of his death. Not having been presented to the probate court for allowance, the claims were certainly barred under the provisions of Gen. St. c. 53, § 14, unless saved by section 16 of the same chapter, by reason of the pendency of an action on them at the time of Fern's death. But we take it that, to bring the

case within this section, the specific claim or cause of action must be in litigation at the time of the debtor's decease. Only the claim thus in litigation can be paid without being proved in the probate court.

It is not enough that the deceased was a party to an action for another purpose; nor can an action brought for some other purpose be changed, after his death, into one for the recovery of a debt against his estate. The executor or administrator is by statute exempted from any such action. Gen. St. 1878, *c.* 53, §§ 15, 53. It certainly cannot be claimed for those subsequently brought in as defendants that they had an action pending on their claims at the time of Fern's death. They were afterwards made parties defendant solely for the purpose of determining their interest in the common fund, the wheat belonging to the depositors as tenants in common. This was the only purpose for which they could properly be brought in. And in their answers they make no personal claim against Fern's estate, and allege no facts that would entitle them to any. What they demand is their share of the wheat, and judgment against Young, Fairchild, and the bank for the value of the wheat that had been wrongfully converted. The same is true of the complaint of those depositors who brought the action. They brought it to establish their right to the wheat stored with Young, part of which they claimed he had wrongfully converted by disposing of it to the bank through Fairchild, its cashier. What they demanded, aside from the wheat left, was judgment against Young, Fairchild, and the bank for the value of the wheat converted. They ask for no personal judgment against Fern, and allege no facts entitling them to it. True, there was a general allegation that Fern had knowledge of and consented to the grain being delivered to the bank; but, in the absence of any allegation that he had any control over its disposition, or actively assisted in it, this would create no liability on his part, even under the doctrine of the supplemental opinion of this court in *Leuthold* v. *Fairchild, supra.* This is equally true of the amended complaint, in the absence of any allegation that Fern knew of any wrong when he assisted his master in disposing of the wheat. Fern was evidently made a party because he claimed an interest, as depositor, in the common fund. The object was to exclude him from participating in it, and the allegation

as to his knowledge of and consent to the disposal of a part of the wheat was undoubtedly made with the idea that that fact would estop him from participating in the common property until the other tenants in common were paid in full.    There is neither an allegation nor a prayer in the complaint suggestive of the idea that any claim was made against Fern as a tort-feasor for the value of the grain wrongfully converted.    How, under this state of the pleadings, judgment was rendered against Fern's estate, we do not know.    Either the parties voluntarily assumed to try issues outside the pleadings, or else, the main contest being between the depositors and the bank, the rights of the estate of Fern were lost sight of.

We think we are justified by the record in saying that the idea of holding Fern liable was an after-thought, that did not enter into the minds of the parties when framing their pleadings; and, if our attention had been called to the issues, a different conclusion would have been reached in *Leuthold* v. *Fairchild*, *supra*.    The judgment in that case is of course now *res judicata*, but does not conclude us in the present case from considering the nature and *status* of the action pending against Fern at the time of his death.

It is suggested that this question was not within the issues tried or covered by the findings of the court below, and has never been passed upon by it.    It was certainly in the case, and fully presented by the record, before that court and now before us.    The most that can be said is that it may not have been called to the attention of the trial court.    The judgments appealed from are both reversed.