# CHARLES W. NICHOLS v. F. B. ATWOOD.[1]

December 4, 1914.

Nos. 18,815—(70).

**Special verdict — evidence.**

1. The evidence sustains the special finding of the jury that the subscription contract upon which the action is brought was made with a corporation other than plaintiff's assignor.

**New trial — no cause of action.**

2. The reception in evidence of an exhibit bearing solely upon another issue properly in the case, even if technical error, did not warrant a new trial since the special finding above mentioned determined that plaintiff could have no cause of action no matter how such other issue was decided. Furthermore, the trial court properly received the exhibit and correctly instructed the jury how and when to consider the same, and hence, in ordering a new trial because of the reception thereof, erred.

**New trial.**

3. The record presents no erroneous rulings or instructions which entitled plaintiff to a new trial.

Action in the district court for Hennepin county to recover a balance of $2,500 alleged to be due under a certain contract. The facts are stated in the opinion. The case was tried before Dickinson, J., and a jury which returned a verdict in favor of defendant, and special findings as stated in the opinion. From an order granting plaintiff's motion for a new trial, defendant appealed. Reversed.

*Hall, Tautges & Loeffler* and *Robert S. Kolliner,* for appellant.
*Mercer, Swan & Stinchfield,* for respondent.

HOLT, J.

Plaintiff, claiming to be owner by assignment of a subscription contract executed by defendant for 45 shares of the treasury stock of the Colorado-Yule Marble Co., sued to recover the amount unpaid.

[1] Reported in 149 N. W. 672.

The answer alleged that plaintiff was not the owner of the contract; that his purported assignor was not the party with whom defendant contracted, but was the mere agent of the corporation mentioned; and that defendant's signature was obtained by means of false representations in regard to its business and property. This appeal by defendant is from an order granting plaintiff a new trial after verdict and special findings in defendant's favor.

Early in 1910 defendant's attention was called to the stock and business of the Colorado-Yule Marble Co., hereafter called the marble company, a ten million dollar Colorado corporation, owning extensive marble quarries and equipments in that state. From the start the corporation had in the Knickerbocker syndicate a fiscal and transfer agent to dispose of its stock and securities. In 1907 the Knickerbocker corporation was merged in the then organized Fidelity Bond & Mortgage Co., hereinafter referred to as the bond company, a New York corporation, in 1912 purporting to have a capital and surplus of $1,321,509.54. Plaintiff procured the subscription from defendant. He claims that he was then the western sales agent of the bond company, but had no connection with the marble company except as stockholder until in December, 1911, when he entered its employ. The subscription contract here involved was signed January 13, 1911. About six months previously defendant had bought through plaintiff, five shares of the marble company stock. By means of plaintiff's personal solicitations and literature mailed or handed to defendant, he was importuned to purchase more, which finally culminated in the contract mentioned the day after the president and vice-president of the marble company, at a meeting or luncheon arranged for by plaintiff, had made certain representations to defendant concerning the property and prospects of the corporation. It is not necessary to particularly refer to the alleged false representations which induced defendant to subscribe. It is sufficient to state that the evidence at the trial centered on these propositions: Was plaintiff the real party in interest? Was the marble company in fact a party to the subscription contract with defendant? Was the subscription for 45 shares of stock obtained from defendant by means of fraud and deceit? The jury by special findings

answered the first in the negative, and the other two in the affirmative, in addition to rendering a general verdict in favor of defendant. The court granted a new trial on the sole ground that prejudicial error was committed in receiving parts of an exhibit numbered 7 in evidence.

The contention of appellant is that Exhibit 7 was admissible and, even were it otherwise, no prejudicial error resulted from its reception since the jury found that defendant's contract was not with plaintiff's assignor, and that plaintiff is not the real party in interest. The respondent retorts that there is no evidence to sustain either the general verdict or special findings and that the record discloses prejudicial errors, other than the one appearing to the trial court, therefore the order must be affirmed. This result is inevitable, if the verdict lacks support or there be rulings raised by the motion for a new trial disclosing prejudicial error. Fitger v. Guthrie, 89 Minn. 330, 94 N. W. 888; Poirier Mnfg. Co. v. Griffin, 104 Minn. 239, 116 N. W. 576.

Plaintiff on the trial disclaimed a cause of action if defendant's contract was with the marble company, for plaintiff does not claim through it. It follows that, if the special finding that defendant contracted with the marble company is supported by the evidence, the general verdict must stand, unless the rulings complained of and assigned as error on the motion for new trial affect or prejudicially bear on the determination of the special finding mentioned. The issue of fraudulent representations becomes immaterial. We now call attention to some of the matters from which the jury could draw the conclusion that defendant contracted with the marble company. The printed form or blank of the subscription contract signed by defendant, in itself, justifies his contention that he dealt with the marble company. Circulars or literature had either been handed to him by plaintiff or mailed, disclosing that one Meek was the president of the marble company and Charles Austin Bates its vice-president and director. Bates was also the president of the bond company. In one of these circulars, over the name of Mr. Bates, we read: "We are selling something we already own and have paid for. We do not have to make the marble. All we have to do is to cut

it out and put it on the cars." This must refer to the marble company, for the bond company owned no quarries. The same circular gives the residence and character of the directors of the marble company and we read concerning director Bates: "Charles Austin Bates. is president of the Fidelity Bond and Mortgage Company of New York, and to him has fallen the task of disposing of the company's. securities, from time to time, as the cash was needed for development work. The Fidelity Bond and Mortgage Co. is the registrar and transfer agent of the Marble Co." In addition to the president of one corporation being the vice-president and director of the other,. they had a treasurer in common, and shared the same office in New York City. The record suggests the thought that the chief reason for calling the bond company into existence was the use of a desirable fiscal, sales and transfer agent by the officials of the marble company. Plaintiff, Mr. Meek and Mr. Bates came to Minneapolis on January 12, 1911, invited defendant and other prospective subscribers for lunch at the West Hotel, ostensibly to induce the guests. to subscribe for stock in the marble company. Mr. Meek then in the presence of Mr. Bates and plaintiff made an extended statement in respect to the properties, condition and prospects of the marble company to defendant and the other invited persons. Plaintiff at no time informed defendant that he or the bond company acted in any other capacity than sales agent for the marble company. It may well be surmised that if prospective subscribers had been told facts. such as now claimed by plaintiff, namely, that this so-called fiscal agent, registrar and transfer agent was owner of the stock, having purchased it from the marble company, it would have deterred them from subscribing. In view of the facts alluded to, no fault should be found with the jury for attaching little importance to this direction, in small print, on the subscription contract below the blank for the signature of the subscribers: "Send subscriptions and make checks payable to Fidelity Bond & Mortgage Co. 2 West 33rd street (at Fifth avenue) New York." The jury were amply justified in finding that defendant contracted with the marble company. The special finding that plaintiff is not the real party in interest is but corollary and inevitable conclusion from the one mentioned before.

And in passing we may say that it is not surprising that plaintiff's testimony concerning the assignment to him by the bond company of the cause of action failed to carry conviction. It was to the effect that, when he transferred his services from it to the marble company, he was unable to get either his pay or a statement of the amount due, and finally after waiting almost a year he had to accept. an assignment of defendant's contract from an employer having a capital and surplus exceeding a million dollars.

Plaintiff also claims that it conclusively appears that defendant, after knowledge of the deceit, made payments on the subscription and received shares for the amounts paid, thereby precluding a rescission, and further there being no proof of damages judgment should go for plaintiff. Even were the premise true, the conclusion does not follow, for plaintiff is again met with the special findings. However, we may remark that it was for the jury to accept or reject defendant's testimony that, when the last payment was made, he had not ascertained all the facts as to the fraud practiced upon him and that plaintiff's explanation, when called to his attention, was such that defendant's aroused suspicions were abated.

We are forced to the conclusion that the issue of fraud and deceit is now of no importance, and that no error in the admission of evidence relating thereto was prejudicial, unless it is made to appear that it affected the controlling finding that defendant contracted with the marble company. "Where upon a special verdict upon one issue the party is entitled to the judgment rendered, error in the charge or admission of evidence as to another issue will be disregarded," Whitacre v. Culver, 9 Minn. 279 (295); Cole v. Maxfield, 13 Minn. 220 (235). The court might have properly told the jury that, if they found that the subscription contract was with the marble company, they need give no further consideration, or any answer, to the other two questions submitted. If immaterial issues are injected into a trial, we may concede that the litigant who is not to blame therefor or who has objected thereto is prejudiced. But this is not such a case in respect to the defense that the contract was procured by false representations. Defendant was not bound to anticipate a favorable finding on the controlling issue indicated. He had

a right to tender and litigate the issue of fraud. The connection between plaintiff and the two corporations and their relation to each other was such that it opened wide the door of inquiry. If defendant was able to prove the deception pleaded, he was entitled to so do, and need not place his whole reliance on the other defenses set up. Hence we may not say that plaintiff was prejudiced by the litigation of an irrelevant and immaterial issue, or that the cry of fraud and false representations needlessly obscured or prejudiced the pivotal question. Rauma v. Bailey, 80 Minn. 336, 83 N. W. 191. We are therefore of opinion that no prejudice resulted to plaintiff from the reception of the parts of Exhibit 7 read to the jury, assuming the same inadmissible. It does not touch or bear upon the controlling special finding.

But that aside we are of the opinion that no error was committed in the reception of Exhibit 7, in view of the instructions given the jury. They were told that, if the subscription contract was between defendant and the bond company, these statements made by the marble company, or issued by it or by its officers, would not be competent evidence against plaintiff. "If the marble company was not the principal in these transactions, then the paragraphs and figures from Exhibit 7, which have been read to you, should be disregarded, as well as any other statements appearing in the evidence which you cannot find were authorized by plaintiff or the bond company. And, gentlemen of the jury, no evidence as to the condition of the company subsequent to January 13, 1911, is of any materiality or relevancy to the issues here, except as they may show or tend to show what the true state of facts was at that date, or prior thereto, and then only insofar as they may show or tend to show the falsity of any of the alleged representations which I have pointed out." The learned trial court rightly and clearly limited and guided the jury not only in the consideration of Exhibit 7, but also of other exhibits and testimony bearing on the alleged representations.

Several matters in the record are urged as sufficient errors justifying a new trial. We have examined all, but only two, apart from those already considered, require notice. One who became president of the marble company long after the defendant signed the sub-

scription was a witness for plaintiff. He had previously been a director. Plaintiff attempted to prove by him that the marble company had sold to the bond company its treasury stock of 6,270 shares out of which came the 45 shares subscribed for by defendant. It was elicited that the alleged sale was not evidenced by any writing, unless a resolution passed by the board of directors of the marble company was contained in its records which were not within the state. Several pages of the settled case are filled with counsel's unsuccessful attempts to have the witness state the legal conclusion that the resolution effected a sale of the stock, and to show an oral acquiescence by an officer of the bond company, but he nowhere asks the witness to give either the language or the substance of the resolution. No attempt was made to offer secondary evidence thereof. It is taxing the credulity of a court and jury beyond limit to attempt to prove a transaction involving more than half a million dollars between two corporations by the mere say so, or conclusions, of a director or officer, without producing either the original minutes or a copy containing the resolution embodying the deal, or even offering testimony as to the substance of the resolution. There was no error in the ruling. The authorities cited by respondent to sustain his position are not in point. There was here no attempt to prove what actually took place.

A refusal to give this instruction is one of the errors urged as valid reason for sustaining the new trial awarded: "It makes no difference in this case whether or not the defendant knew that the plaintiff Nichols was acting in making this contract of sale for the Fidelity and Bond Company and Mortgage Company or for the Colorado-Yule Marble Company, if you find in fact that he was acting only for the Fidelity Bond and Mortgage Company. If the Fidelity Bond and Mortgage Company was in fact the principal in the sale of these securities and no statement or representation to the contrary was made to the defendant by the plaintiff or any other representative or agent of the Fidelity Bond and Mortgage Company, then the said Fidelity Bond and Mortgage Company was the owner of whatever cause of action, if any there was, in this case, and was entitled to assign that cause of action to this plaintiff."

The instruction was not proper. The first sentence thereof is palpably misleading as applied to the issues in this case. If defendant knew that plaintiff represented only the bond company, he, in entering the contract, could place no reliance upon unauthorized representations made by the marble company, but if justified in the belief that he was dealing with the latter he could rely on its statements.

We consider plaintiff had a fair trial. The decisive issue as to which corporation defendant became obligated to was decided against plaintiff. No error inheres in that determination. We are inclined to the opinion that no technical error was made by the trial court in the reception of Exhibit 7, especially in view of the clear instructions when and how to apply the portions received, and are firmly convinced that in no event was plaintiff prejudiced by the ruling thereon at the trial, nor by any other ruling. Consequently the new trial should not have been granted.

Order reversed.