IN RE ESTATE OF IVER I. HOLUM.[1]

February 7, 1930.

No. 27,628.

[1]Reported in 229 N. W. 133.

*A. R. English* and *Oscar Hallam,* for appellants.

*S. B. Wilson, Jr.* and *J. W. Schmitt,* for respondent.

HOLT, J.

The action was tried and findings made in favor of appellants by Judge Nelson. Judge Howard, his successor in office, granted respondent a new trial, stating in the order that it was "granted entirely for errors of law occurring at the trial and excepted to." This appeal followed.

Iver I. Holum, a farmer, died February 25, 1918, intestate. He owned a farm of 240 acres in Murray county, this state, 80 acres of which was his homestead. He was survived by his wife and three sons. One of the sons died July 25, 1920, without wife or issue. On April 23, 1923, a decree of descent was entered in the probate court of Murray county assigning the farm in proper proportions to the widow and sons then living. No appeal was ever taken from this decree. One August 27, 1927, Ingebrigt Holum petitioned the probate court to vacate the decree, claiming to be an illegitimate son of Iver I. Holum, whom the latter in writing, duly attested by a competent witness, had declared to be his son, and asserting "that because of a mistake in fact and inadvertence this petitioner was omitted and not included in this distribution and so was deprived of his just proportion and share of said estate." He alleged that he did not learn of his legal rights until in May, 1927. In answer to the petition the appellants here denied that the petitioner was the illegitimate son of Iver I. Holum or that the latter ever at any time acknowledged him as his son in writing or otherwise, and they pleaded the decree, that petitioner knew of the death of Iver I. Holum and had never asserted any title or interest in or to the premises and is now estopped from so doing. The probate court denied the petition, principally on the ground of laches and lack

of satisfactory proof of a written attested acknowledgment by Iver I. Holum that petitioner was his son. Petitioner then appealed to the district court, where Honorable L. S. Nelson made three decisive findings against petitioner, viz: That his parentage was not proved; that Iver I. Holum did not in writing, attested as alleged in the petition, acknowledge himself to be the father of Ingebrigt Holum; and that the latter's laches barred the relief asked.

It is clear that the rulings of Judge Nelson, which Judge Howard assigns as grounds for granting Ingebrigt Holum's motion for a new trial, were erroneous. They excluded family traditions and declarations of deceased members of the family, and the testimony of an interested heir on that subject contrary to the holding of this court in Geisler v. Geisler, 160 Minn. 463, 200 N. W. 742. The appellants do not seriously attempt to justify such rulings. They do claim that some of the evidence excluded was subsequently received, and also that the evidence excluded bore entirely on the issue of parentage; and therefore, even though erroneously rejected, no prejudice resulted, for either one of the other two above mentioned pivotal findings requires a judgment denying the petitioner, Ingebrigt Holum, relief.

We are persuaded that if the testimony erroneously excluded had been received, a finding that Iver was the father of Ingebrigt would have been compelled. And we are not prepared to say it might not also have had some effect, at least indirectly, upon the issue of the existence of the written acknowledgment of parentage, as to which issue we concur in the opinion of Judge Howard, that the evidence received would sustain a finding either way. The evidence excluded might have turned the scales in favor of Ingebrigt on that issue. But we are unable to find in any of the rulings upon which Judge Howard predicated a new trial which admitted or rejected testimony that could have had the slightest bearing upon the issue of laches or estoppel.

Appellants claim that the vacation of the decree was addressed to the judicial discretion of the probate court and that its action could not be reversed by the district court except for abuse of dis-

cretion.   Southern Minn. I. & L. Co. v. Livingston, 117 Minn. 421, 136 N. W. 8.   But the trial in the district court was de novo, and that court was invested with the same discretion as the probate court.   The application to vacate was here made within a year after knowledge of the decree and comes within the statute authorizing opening a judgment or decree for fraud, mistake, inadvertence or excusable neglect.   G. S. 1923 (2 Mason, 1927) §§ 8701(4) and 8983(8) ; Savela v. Erickson, 138 Minn. 93, 163 N. W. 1029; In re Estate of Koffel, 175 Minn. 524, 222 N. W. 68.   The decree was subject to being opened for good cause under the decisions cited, and the contention of appellants that it is now invulnerable cannot be sustained.

The probate court as well as Judge Nelson in the district court held that by his laches in asserting his rights Ingebrigt Holum is barred or estopped from having the decree vacated so as to assert title to the property distributed thereby.   As already stated, as to that issue the trial court committed no error in the exclusion or reception of evidence upon which Judge Howard predicates the order granting a new trial.   The finding thereon, if supported by the record, necessarily disposes of the case against the respondent, irrespective of the errors of law affecting the findings as to parentage and the acknowledgment thereof.   Nichols v. Atwood, 127 Minn. 425, 149 N. W. 672.   It is apparent that in granting a new trial exclusively for errors of law Judge Howard overlooked the consequences of the finding of laches.   These are in substance the facts found supporting the conclusion of fact that laches of Ingebrigt should debar him from the relief he petitioned for :

Ingebrigt attended the funeral of Iver I. Holum, and some two years later the funeral of one of the latter's sons.   He knew the situation of the land, its ownership by Iver I. Holum, and that it was occupied and claimed by his wife and two sons.   He asserted no claim to any share therein.   In the meantime the widow of Iver I. Holum has grown too old and infirm to appear in court or to testify; some witnesses for appellants have died.   The land has been much improved and it has been farmed in connection with

80 acres owned by one of Iver I. Holum's sons without any thought of accounting to anyone, such owner being willing that his mother and brother should share in the profit without any effort at keeping separate accounts. Subsequent to Iver I. Holum's death assessments of more than $3,000 against the land have been paid. And the finding was:

"That the delay of petitioner in making said petition was unreasonable, and the situation of the parties and of said lands was changed between the time of the death of said Iver I. Holum and the presenting of the petition herein by the petitioner. That any readjustment of the rights of the parties would be very difficult, and that said petitioner was guilty of laches in the presentation of any claim."

In connection with all this the record reveals without dispute that Ingebrigt had known at least for 40 years that Iver I. was his father, and knew before the father died that the latter had in a writing, witnessed by Paul Iverson, the brother of Iver, acknowledged Ingebrigt as his son.

The petition was not based on any fraud practiced by appellants, nor could it be; for even if they, from family tradition, knew Ingebrigt to be the illegitimate son of Iver, there is nothing whatever in the record from which it might be inferred that any one of them knew of the existence of the written acknowledgment of parentage. So the right to relief must rest wholly upon a mistake for which appellants were in no way responsible, but the whole blame for which rested on Ingebrigt. The alleged written acknowledgment of sonship by Iver, Ingebrigt claims was exhibited to him and to his wife and children while both Iver and his brother, the attesting witness, were living. One of Ingebrigt's children was then a bright young woman with some experience as stenographer and clerk of lawyers having considerable probate practice. Ingebrigt had lived in Mankato, a city of some size, upward of 40 years. He and his family could not have escaped absorbing sufficient intelligence to know that if he ever expected to obtain any inheritance from a person, the time to claim it was soon after the person's death; but he

sat by for more than nine years after the death of Iver and for more than four years after the entry of the decree of descent without advising any of appellants that he had or intended to claim any interest in the farm Iver had owned and which had been acquired, improved and farmed and upon which taxes and assessments had been paid solely by the efforts of Iver and appellants.

In Fern v. Leuthold, 39 Minn. 212, 215, 39 N. W. 399, 401, after stating that lapse of time did not deprive the probate court of the power to vacate a decree obtained by fraud or erroneously rendered by inadvertence, the court said "it would require a strong case to warrant a court in doing so after the lapse of two years." The stability of probate decrees are of importance. They are proceedings in rem. Titles to real estate depend on the binding effect of such decrees. And the one who petitions for their vacation in order to claim lands distributed to others should be denied the relief where it appears that with full knowledge of the facts entitling him thereto he has slept on his rights for years and permitted those to whom the lands were decreed to expend money and efforts in improvements under the belief that the petitioner neither had nor claimed to have any right or title thereto.

We consider the finding of laches amply sustained by evidence properly received, and there is no evidence to the contrary nor was any tending in that direction excluded. We have examined all the cases cited by respondent on the subject of laches; and, no matter how much weight be given to Ingebrigt's ignorance of the legal import of the alleged acknowledgment of parentage and to his hesitancy to assert a claim against relatives, we are convinced that the finding of Judge Nelson that Ingebrigt was guilty of laches which justified a denial of relief is supported. That being so, Judge Howard should not have granted a new trial for errors which in no manner affected that finding. Even if it be assumed that Ingebrigt as a matter of law was entitled to the findings that he was Iver's son and that Iver had acknowledged him as son in the form declared legal by G. S. 1923 (2 Mason, 1927) § 8723, still with the finding of laches sustained by sufficient evidence the conclusion of

law of Judge Nelson would require judgment to be rendered in favor of appellants. Judge Howard had no authority to amend the findings of fact. Bahnsen v. Gilbert, 55 Minn. 334, 56 N. W. 1117. He possessed the power to grant a new trial if he concluded that any essential fact required to support the judgment ordered by Judge Nelson was not sufficiently sustained by the evidence. School Dist. No. 1 v. Aiton, 175 Minn. 346, 221 N. W. 424. He did not intimate that the findings relating to estoppel or laches were not supported. On the contrary he granted a new trial exclusively for errors of law, errors which were immaterial to the result so long as the findings relating to laches stand.

The order is reversed.

WILSON, C. J. took no part.

[1]Reported in 229 N. W. 138.