IN RE ESTATE OF CHESTER T. DANIEL.
N. J. WHITNEY v. JOSEPH DANIEL AND OTHERS.[1]

October 25, 1940.

No. 32,526.

[1]Reported in 294 N. W. 465.

*Nelson & Plunkett,* for appellants.

*Meighen, Knudson & Sturtz* and *Yessler, Liddle & Fahey,* for respondent.

PETERSON, JUSTICE.

Respondent, who on April 1, 1939, was appointed special administrator of the estate of one Dorothy Phillips, deceased, petitioned the probate court of Mower county on April 8, 1939, as a creditor to appoint a general administrator of the estate of one Chester T. Daniel, deceased. The petition was denied upon appellants' objection that an order of the probate court on January 11, 1938, allowing the account and discharging the special administrator of Chester's estate upon a finding that there were no assets for general administration was *res judicata* that there were no assets for general administration. Respondent then filed a petition to vacate the order upon the ground that the finding of no assets was contrary to the fact. The probate court denied the petition to vacate. On respondent's appeal to the district court both orders were reversed.

We take the facts as found by the district court upon conflicting evidence. Dorothy Phillips, who was between 14 and 15 years old, was unmarried and lived with her parents in Albert Lea. Chester T. Daniel, who was about 22 years of age, was unmarried and lived with his parents at Austin. Chester, Dorothy, and two other girls went from Albert Lea to a dance near Northwood, Iowa, in Chester's automobile on the evening of November 19, 1934. Early in the morning of November 20, 1934, while driving on highway No. 65

in Iowa, Chester's car collided with a truck driven by one Elzig. Chester was killed instantly. Dorothy received injuries from which she died very shortly afterwards while she was being attended in a doctor's office. The other two girls were also injured.

Dorothy's parents consulted a reputable lawyer at Albert Lea shortly after the accident concerning their rights to recover for Dorothy's death and were advised that a cause of action does not survive against a tort-feasor and that an action would not lie against Chester's estate. The attorney apparently assumed that the law of Minnesota governed. The parents relied on this advice. They had marital troubles and finally were divorced. The father, who had been away from home much before Dorothy's death, then went to Iowa. Some time later the mother went to Michigan.

Early in 1939 Dorothy's mother learned from a lawyer at Cedar Rapids, Iowa, whom she was then consulting about other matters, that under the law of Iowa a cause of action survives against a wrongdoer and that an action would lie against Chester's personal representative. Immediately thereafter she consulted Minnesota lawyers, who instituted the proceedings which resulted in the appointment of respondent, who is a citizen of this state residing at Albert Lea, as special administrator of Dorothy's estate.

There is a finding that respondent in good faith petitioned for general administration of Chester's estate as a creditor with a tort claim for Dorothy's death which he alleges resulted directly from Chester's recklessness and gross negligence.

The Code of Iowa, 1935, which is set forth in the margin,[2] provides that causes of action shall survive and may be brought notwithstanding the death of the person entitled or

2Chapter 484. Forms of Action.

"10957. All causes of action shall survive and may be brought notwithstanding the death of the person entitled or liable to the same.

liable to the same; that such an action may be brought by or against the legal representatives of the deceased; that damages recovered where the wrongful act produces death shall be disposed of as personal property belonging to the decedent's estate, but that the estate shall not be liable for his debts where he leaves a husband, wife, child, or parent; that the father of a minor, or in case of his death, imprisonment, or desertion of his family, the mother, may recover

---

"10958. The right of civil remedy is not merged in a public offense, but may in all cases be enforced independently of and in addition to the punishment of the latter.

"10959. Any action contemplated in sections 10957 and 10958 may be brought, or the court, on motion, may allow the action to be continued, by or against the legal representatives or successors in interest of the deceased. Such action shall be deemed a continuing one, and to have accrued to such representative or successor at the time it would have accrued to the deceased if he had survived. * * *"

Chapter 507. Settlement of Estates.

"11920. When a wrongful act produces death, damages recovered therefor shall be disposed of as personal property belonging to the estate of the deceased, but if the deceased leaves a husband, wife, child, or parent, it shall not be liable for the payment of debts."

Chapter 487. Limitations of Actions.

"11007. Actions may be brought within the times herein limited, respectively, after their causes accrue, and not afterwards, except when otherwise specially declared: * * *

"3. Those founded on injuries to the person or reputation, including injuries to relative rights, whether based on contract or tort, or for a statute penalty, within two years; * * *."

"11013. The time during which a defendant is a nonresident of the state shall not be included in computing any of the periods of limitation above described."

Chapter 486. Parties to Actions.

"10986. A father, or, in case of his death or imprisonment or desertion of his family, the mother, may as plaintiff maintain an action for the expenses and actual loss of service resulting from the injury or death of a minor child."

for the expense and actual loss of service resulting from the death; that the actions founded on injuries to the person must be brought within two years; and that the time during which the defendant is a nonresident of Iowa shall not be included in computing the period of limitation.

Meanwhile the special administration proceedings had been had on Chester T. Daniel's estate, all *ex parte* and without notice of any kind. The petition for the appointment of Chester's brother as special administrator was filed, and his appointment as such was made on January 3, 1935. The special administrator's account, petition for its allowance, and the representative's discharge were filed and the order allowing the account and discharging the representative was made on January 11, 1938. No inventory was filed. There were no findings by the probate court in the special administration as to who was entitled to his estate or who were his next of kin and heirs.

Chester's special administrator recovered a judgment in federal court against Elzig for wrongfully causing Chester's death, the amount recovered to be distributed pursuant to the statute.

Both the petition for appointment of the special administrator and that for the allowance of his final account and discharge state, and the order of January 11, 1938, allowing the account and discharging him recites, that there were no assets except the claim for Chester's wrongful death.

Contrary to the statements in the petitions and the order of the probate court, the fact was that Chester died, as the court below found, the owner of personal property of substantial value consisting of the automobile in which he was riding at the time of his death, which was wrecked so badly as to be junk, a motorcycle, a watch and other personal effects, some wages due from his employer, and a policy of insurance covering liability for tort arising from the opera-

tion of the automobile. There had been no administration upon such property.

The court below concluded that both orders of the probate court should be reversed and directed the probate court to appoint an administrator and to proceed with a general administration of the Chester T. Daniel estate.

Here, as below, the appellants contend that the order allowing the special administrator's account in the Chester T. Daniel estate and discharging him is *res judicata* that there are no assets to administer and operates as a bar to the granting of administration upon his estate, that the alleged cause of action for Dorothy's death is barred by the statute of limitations of both Iowa and Minnesota, and that the respondent and those interested in the Dorothy Phillips estate are barred from any relief herein by laches.

■ Approval of the final account and discharge of an executor or administrator is not conclusive that the estate has been fully administered so as to preclude further administration upon unadministered assets. In re Estates of Gilroy, 193 Minn. 349, 355, 258 N. W. 584. The question was fully considered in the Gilroy case, and we do not deem it necessary to add anything to what we there said.

The undeniable fact is that there has been no administration upon the property which Chester owned at the time of his death. The amount recovered for Chester's death was no part of his estate. The probate court had no jurisdiction to control the action in which the recovery was had or to direct the distribution of the fund after it was recovered. Vukmirovich v. Nickolich, 123 Minn. 165, 143 N. W. 255. The property which was subject to administration was not administered. The probate court erred in denying respondent's petition to appoint a general administrator and was properly reversed by the district court.

■ It is elementary that the *lex loci* governs in all matters relating to the right and the *lex fori* in all matters relating to the remedy. In the last analysis the applicability

of the Iowa statute of limitations depends on whether it relates to the one or to the other.

Survivability of a cause of action relates to the right and is governed by the law of the place where the act occurred upon which the right or liability rests. The law of Iowa that a cause of action against the tort-feasor survives governs. The right of action based on the Iowa survival statute may be enforced in this state as a matter of comity although we do not have a similar statute. Chubbuck v. Holloway, 182 Minn. 225, 234 N. W. 314, 868; Kertson v. Johnson, 185 Minn. 591, 242 N. W. 329; Brown v. C. & N. W. Ry. Co. 129 Minn. 347, 152 N. W. 729 (Iowa statute); Restatement, Conflict of Laws, § 390. Conversely, it is held under the rule that where the cause of action does not survive under the law of the place where the wrongful injury was caused, no action may be maintained although under the law of the forum such actions do survive. Ormsby v. Chase, 290 U. S. 387, 54 S. Ct. 211, 78 L. ed. 378, 92 A. L. R. 1499; Friedman v. Greenberg, 110 N. J. L. 462, 166 A. 119, 87 A. L. R. 849.

Under the law of Iowa the original cause of action of the injured party against the tort-feasor survives for the benefit of designated beneficiaries. The Iowa statutes do not create a new cause of action for wrongful death. In Boyle v. Bornholtz, 224 Iowa, 90, 93, 275 N. W. 479, 481, citing a large number of its own decisions, the court said:

"Code sections 10957-10959, providing respectively for the survival of actions and for actions by or against legal representatives, do not create a cause of action for wrongful death, but abrogate the common-law rule that an existing cause of action was terminated by the death of the party entitled to recover. The original cause of action that accrued to the injured party in his lifetime survives. Code section 10959 provides that 'such action shall be deemed a continuing one, and to have accrued to such representative or

successor at the time it would have accrued to the deceased if he had survived.'"

The action is treated as one for personal injuries, which has survived, and subject to the general statute of limitations applicable to actions for personal injuries. McBride v. B. C. R. & N. Ry. Co. 97 Iowa, 91, 66 N. W. 73, 59 A. S. R. 395; 16 Am. Jur., Death, § 175, note 11.

The Iowa statutes as construed by the highest court of that state authorize an action for the wrongful death of a minor under § 10959 by the representative to recover such damages as may accrue as a result thereof to his estate and is for the benefit of the estate. Under § 10986 the father, or in case of his death, imprisonment, or desertion of his family, the mother, may recover for the expenses and actual loss of service resulting from the death for the benefit of the father or the mother as the case may be. Walters v. C. R. I. & P. R. Co. 36 Iowa, 458; Hively v. Webster County, 117 Iowa, 672, 91 N. W. 1041.

The limitation of time within which an action may be brought relates to the remedy and is governed by the law of the forum. 1 Dunnell, Minn. Dig. (2 ed. & Supps.) § 1546.

The Iowa statute, § 11007(3), *supra*, requires an action to be brought in cases of this kind within two years as an action for personal injuries. McBride v. B. C. R. & N. Ry. Co. 97 Iowa, 91, 66 N. W. 73, 59 A. S. R. 395. An action for personal injuries caused by negligence comes within the six-year limitation of 2 Mason Minn. St. 1927, § 9191(5). Ott v. G. N. Ry. Co. 70 Minn. 50, 54, 72 N. W. 833; Ackerman v. C. St. P. M. & O. Ry. Co. 70 Minn. 35, 72 N. W. 1134; Brown v. Village of Heron Lake, 67 Minn. 146, 69 N. W. 710; 4 Dunnell, Minn. Dig. (2 ed.) § 5654. "The period of limitation of time prescribed for actions founded on injuries to the person has generally been held applicable to actions for wrongful death where there was no other

statutory limitation expressly applicable thereto." 16 Am. Jur., Death, § 175.

The statute of limitations of the forum applies unless this case comes within a recognized exception to the rule. First to be considered is 2 Mason Minn. St. 1927, § 9201, which provides that when a cause of action arises outside of this state and is barred by the place where it arose it shall be barred here "unless the plaintiff be a citizen of the state who has owned the cause of action ever since it accrued." The cause of action arose in Iowa and would be barred there if the Iowa statute applied. Savage v. Scott, 45 Iowa, 130. The respondent has been a resident of this state ever since the cause of action accrued. The minor was a citizen thereof at and prior to her death. Her parents were such citizens prior to, at the time of, and for some time after the cause of action accrued. The time of their respective departures is not definitely shown, but that matter is not important.

Assuming that § 9201 is applicable, it is sufficient to say that the cause of action has been owned by a citizen of this state ever since it accrued. By the terms of the Iowa statute the cause of action accrues to the personal representative and not to those for whose benefit the action is brought. Flynn v. C. G. W. R. Co. 159 Iowa, 571, 141 N. W. 401, 45 L. R. A. (N. S.) 1098; Major v. B. C. R. & N. Ry. Co. 115 Iowa, 309, 88 N. W. 815; Murphy v. C. M. & St. P. Ry. Co. 80 Iowa, 26, 45 N. W. 392. Where an action is brought by a legal representative who has the sole right to sue, as here, his citizenship as a party is determined by his citizenship as an individual and not by that of the beneficiaries of the action. The rule is applied where the plaintiff is an executor or administrator, Chappedelaine v. Dechenaux, 4 Cranch, 306, 307, 2 L. ed. 629; Childress v. Emory, 8 Wheat. 642, 5 L. ed. 705; Coal Co. v. Blatchford, 11 Wall. 172, 20 L. ed. 179; Ingersoll v. Coram, 211 U. S. 335, 29 S. Ct. 92, 53 L. ed. 208; 27 R. C. L. p. 21,

§ 20; a guardian, Mexican Cent. Ry. Co. v. Eckman, 187 U. S. 429, 23 S. Ct. 211, 47 L. ed. 245; City of Detroit v. Blanchfield (6 Cir.) 13 F.(2d) 13, 47 A. L. R. 314; and a trustee of an express trust with authority to sue, Bullard v. City of Cisco, 290 U. S. 179, 54 S. Ct. 177, 78 L. ed. 254, 93 A. L. R. 141.

There remains for consideration whether the two-year limitation of the Iowa statute goes to the right or the remedy. That the limitation refers to the remedy only is apparent for two reasons. First, the statute is a general statute of limitation. It does not in terms apply to actions to recover damages for death caused by tort under the survival statute. It covers all actions "founded on injuries to the person or reputation" whether based on contract or tort, and applies to a death action which survives only because such an action is included in the term an action founded on injuries to the person based on tort. By its terms the statute applies to other actions. The survival section is found in the chapter relating to forms of action and the limitation in the chapter on the limitations of actions. It is clear that the legislature of Iowa treated the section as a general statute of limitation and not as one specifically conditioning rights under the survival statute. A general statute of limitations does not condition rights. It simply prescribes the time within which rights may be enforced. Hence it relates to the remedy only. L. & N. R. Co. v. Burkhart, 154 Ky. 92, 157 S. W. 18, 46 L. R. A. (N. S.) 687, and note; 17 R. C. L. pp. 952-953, § 318, note 4; Restatement, Conflict of Laws, § 605, comment a.

In Gregory v. So. Pac. Co. (C. C.) 157 F. 113, an action was brought in the federal court in Oregon for wrongful death occurring in California. The California statute, which was patterned after Lord Campbell's act and not a survival statute like that of Iowa, gave a right of action for wrongful death. There was no time limitation for the bringing of the action other than the general statute

of limitations, which like the Iowa statute was in the chapter relating to limitations of actions and not the chapter giving the right to an action for wrongful death. The court reviewed the authorities at length and held that the limitation was a general statute of limitation referring to the remedy and not the right. The court said (157 F. 117):

"If the intendment be that the time allotted for bringing action shall operate as a condition to the right of pressing any suit, and as a restriction upon the very liability created, then the condition does not partake of a limitation statute in its ordinary acceptation. If, however, it was the purpose of the Legislature to give the right independent of any specific limitation as to when the action should be instituted, leaving that for regulation by the general statute upon the subject of the limitation of actions, then the time within which the action is required to be brought would pertain to and be referable to the remedy, and would be governed by the law of the forum."

Where the time limitation conditions the right, it fixes the time within which suit must be brought wherever the right may be asserted. The time so fixed is regarded as a condition and not a statute of limitation. The *lex loci* therefore governs as to the time within which such actions must be brought. Negaubauer v. G. N. Ry. Co. 92 Minn. 184, 99 N. W. 620, 104 A. S. R. 674, 2 Ann. Cas. 150; 16 Am. Jur., Death, §§ 164-165. In the Negaubauer case an action was brought in this state under the wrongful death statute of Montana, which was based on Lord Campbell's act. The Montana statute specifically provided that the action should be brought within three years. Our statute, which was otherwise the same as that of Montana, provided that the action should be brought within two years. We held that the

Montana statute governed as to the time for bringing the action, since the time limitation pertained to the right. Such provision in our statute was held to apply exclusively to actions brought thereunder and not to those brought under the laws of other states.

The distinction between an action under a wrongful death statute of the type of Lord Campbell's act and one under a survival statute is well settled. We directed attention to the distinction in Keiper v. Anderson, 138 Minn. 392, 165 N. W. 237, L. R. A. 1918C, 299. See 2 Dunnell, Minn. Dig. (2 ed. & Supps.) § 2600. In 16 Am. Jur., Death, § 65, the text states:

"A distinction is recognized by the courts between 'survival statutes' and 'wrongful death statutes.' Causes of action for injuries to the person are frequently made by statute to survive the death of the injured person whether the death results from the injury or from some other cause. Acts of this kind may be called 'survival acts' and operate as a restriction upon the common-law rule embodied in the maxim 'actio personalis moritur cum persona.' The so-called 'wrongful death statute,' on the other hand, at least, if it is regarded as granting a new cause of action, only operates upon the common-law rule that the death of a human being may not be complained of as an injury in a civil court. Although originating in the same wrongful act or neglect, the cause of action which survives or is revived by statute is for the wrong to the injured person, while the action for wrongful death is for the wrong to the beneficiaries."

The consequence is ordinarily that the time limit for bringing a wrongful death action is generally regarded as a condition, and that for bringing an action under a survival statute as a statute limitation, unless a contrary legislative intention appears. Here the intention to treat the limitation as a statute of limitation and not as a condition is

clear. Hence the six-year limitation of Minnesota and not the two-year limitation of Iowa applies here.

■ The claimed laches consists entirely of mere delay of about four and one-half years in applying for administration without resulting prejudice. That period is less than that allowed by the statute of limitations for the commencement of the action for damages resulting from death.

There is no statutory limitation on the time within which administration may be granted. A petition for administration may be granted whenever an estate is left unadministered in whole or in part. In re Estates of Gilroy, 193 Minn. 349, 258 N. W. 584, *supra;* Wilkinson v. Estate of Winne, 15 Minn. 123 (159). The lapse of time shown here was no bar to respondent's right to have an administrator of Chester's estate appointed.

■ We shall assume, as has been done throughout, that the power of the probate court under the Minnesota probate code, 3 Mason Minn. St. 1940 Supp. § 8992-2(4), to correct, modify, and amend its records to conform to the facts and so as to include in its final decrees "property omitted from the same or from administration," like the same power which it possessed under the prior law, 2 Mason Minn. St. 1927, § 8701(4), is to be exercised in conformity to and regulated by 2 Mason Minn. St. 1927, § 9283, under which the court has the power at any time within one year after notice thereof, in its discretion, to relieve a party from any judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect or to modify or set aside for good cause shown its judgments, orders, or proceedings and supply any omission in any proceeding or record, or to conform any proceeding to the statute under which it was taken.

Laches, if shown, would have barred any right of respondent to have the order allowing the special adminis-

trator's account and discharging him vacated. In re Estate of Holum, 179 Minn. 315, 229 N. W. 133.

In the case of In re Estate of Gragg, 32 Minn. 142, 143, 19 N. W. 651, we held that a judgment allowing claims through collusion between the administrator and claimants was taken by excusable inadvertence and neglect as against the heirs of the decedent who did not know of the administration proceedings and who were absent from the state. We said: "The heirs of Gragg, in whose behalf the application to vacate was made, resided out of the state, and had no actual notice of the administration, and this would excuse their neglect to appear and oppose the claims." In In re Guardianship of Hause, 32 Minn. 155, 19 N. W. 973, we held that an order allowing a guardian's account might be vacated upon the grounds of excusable inadvertence or neglect where the party was ignorant of the proceedings. See 5 Dunnell, Minn. Dig. (2 ed. & Supps.) § 7784, and cases cited in note 2.

Respondent was not personally guilty of any unnecessary delay through fault or otherwise, since it appears that he was not appointed special administrator of Dorothy's estate until after the order of January 11, 1938, was made and that upon his appointment he proceeded with all due dispatch.

Appellants earnestly urge that the parents of Dorothy Phillips had notice of facts sufficient to charge them with knowledge of the entry of the order of January 11, 1938. We shall not review all the cases cited. For example, they cite cases like In re Estate of Holum, 179 Minn. 315, 229 N. W. 133; Fern v. Leuthold, 39 Minn. 212, 39 N. W. 399, and cases of like import. In the Holum case, the one claiming to be an heir waited over nine years before asserting his claim, although he had full knowledge of the decedent's death and all the facts entitling him to the relief which he claimed. In Fern v. Leuthold, the parties moving to vacate knew for over two years and three months of

the pendency of the probate proceedings, but took no steps to assert their claimed rights. In addition, in both cases notice of the pendency of the proceedings was given according to law. Here no notice was given.

While Dorothy's parents knew of Chester's death, they did not know that they had a right of action or that Chester's estate was being probated. Whether or not they had a cause of action depended on the law of Iowa. They were advised by a reputable lawyer that liability did not survive against Chester's estate. They were not required to know the law of Iowa contrary to the lawyer's opinion. The rule that a person is presumed to know the law is not carried to the extreme urged by appellants. See Peterson v. First Nat. Bank, 162 Minn. 369, 203 N. W. 53, 42 A. L. R. 1185. Foreign laws are regarded as facts the same as other facts affecting the rights of the parties. 3 Dunnell, Minn. Dig. (2 ed. & Supps.) § 3789. There is no presumption that a person knows the law of another state. Smeltzer v. White, 92 U. S. 390, 393, 23 L. ed. 508. Even the courts are not required to take notice of the laws of other states under the Uniform Judicial Notice of Foreign Law Act, L. 1939, c. 77, 3 Mason Minn. St. 1940 Supp. §§ 9852-1 to 9852-7, which did not become effective until after Dorothy's parents had learned of their rights and started in motion the proceedings for the respondent's appointment as Dorothy's special administrator, unless the party asking that such judicial notice be taken first give reasonable notice thereof to the adverse parties by the pleadings or otherwise.

The order should be vacated so that the probate court can conform its proceeding to 3 Mason Minn. St. 1940 Supp. § 8992-125, under which it was taken. Jurisdictional to summary closing of the special administration under the statute was the absence of assets for general administration. The probate court did not have the power summarily to close the estate without general administra-

tion if there were assets subject to such administration. The probate court's jurisdictional finding of absence of assets subject to general administration was contrary to the fact. Where a court proceeds contrary to the statute under which its proceedings are taken upon a misapprehension of the facts, it not only has the power, but it should exercise its power, upon a timely application, to correct its error by vacating or amending its judgment, order, or proceedings so as to conform to the statute under which the proceedings were brought. Orfield v. Morstain, 199 Minn. 466, 272 N. W. 260.

Since the respondent and those interested in the Dorothy Phillips estate were not guilty of laches, the order of the probate court should have been set aside, as it was by the court below, so as to permit the general administration to proceed as the law intends that it should where there are assets upon which there should be general administration.

The district court is affirmed on both appeals to it from the probate court.

Affirmed.